Argued December 9, decided December 23, 1913.

# OBERSTOCK v. UNITED RYS. CO.*

(137 Pac. 195.)

**Appeal and Error—Review—Questions of Fact—Denial of Nonsuit.**

1. The denial of a motion for nonsuit will not be disturbed if plaintiff's omission to produce sufficient evidence is supplied by the subsequent introduction of evidence.

**Street Railroads—Operation—Care Required.**

2. Where a railroad runs along a street, the rights of the railroad and of travelers must each be exercised with due regard to the rights of the other, in a reasonable and duly careful manner, depending largely upon the peculiar circumstances of each case; greater care being required of a railroad in such a case than where it has exclusive use of the track.

**Evidence—Opinion Evidence—Speed of Car.**

3. In an action for injuries from being struck by an electric car, testimony of plaintiff as to the speed of the car is competent; its weight being for the jury.

[As to nonexpert testimony as to speed of train or car, see note in Ann. Cas. 1913A, 187.]

**Street Railroads—Operation—Actions for Injuries—Questions for Jury.**

4. In an action for injuries from being struck by an electric car while crossing the track at a point other than a street crossing, evidence *held* to present a question for the jury as to the condition of the street at that point.

**Negligence—Actions—Evidence.**

5. Mere proof of an accident does not *per se* prove negligence but, together with circumstances from which the jury may fairly infer that the accident happened by reason of a negligent act or omission, is sufficient.

[As to presumption of negligence from happening of accident, see note in 113 Am. St. Rep. 986.]

**Street Railroads—Operation—Care Required.**

6. Where a motorman has a clear and unobstructed view of a traveler on the track and fails to give warning, he is negligent, though the place is not at a street crossing; employees being bound to keep a lookout along the tracks, where persons are likely to be found, in order to give proper signals.

**Street Railroads—Operation—Actions for Injuries—Question for Jury.**

7. In an action for injuries from being struck by an electric car, evidence *held* to present a question for the jury whether the accident

*On the question of evidence as to speed of street-cars, see note in 34 L. R. A. (N. S.) 784.    REPORTER.

happened as plaintiff was riding between the tracks and trying to escape or plaintiff's horse backed upon the track just before being struck.

**Witnesses—Examination—Reference to Maps.**

8. When a witness refers to a map, he should be required to designate thereon, or by language, to what reference is made in such a manner that the whole testimony can be considered from the record.

**Street Railroads—Operation—Actions for Injuries—Instruction.**

9. An instruction that, if the railroad track where the accident occurred is located on the public highway or street in the town of L., plaintiff would have the right to pass over it, and would not be confined to any regular or particular crossing, is not objectionable as requiring the railroad to exercise the same care at all points in its course, being confined in its application to a street in the town of L.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by Valencie Oberstock against the United Railways Company, a corporation, which was tried before a jury and a verdict rendered in favor of plaintiff. From a judgment thereon, defendant appeals.

The United Railways Company operates a line of electric railway from Portland in a northerly direction along the Willamette River to and through the town of Linnton. For a considerable distance outside the town of Linnton the railway is constructed on one side or the other of the public highway known as the Linnton road. This road, as it passes through Linnton, becomes the principal street of the town for a distance of a few blocks upon which stores and other buildings front. The travel spreads out and occupies practically the entire street, including the space between the rails of the defendant's railway; the street on both sides of the railroad being macadamized for about 150 feet north of the most northerly store building in the town, known as Lemme's store. Proceeding north the railway track swings gradually to the extreme west of

the highway, where the part of the road occupied by
the tracks is given exclusively to railway use.   The
traveled part of the highway is macadamized; the ma-
cadam extending to the easterly rail of the track.
Between the rails the ground is lower.   A short dis-
tance north of Lemme's store the railway coming
from the north curves out from the west side of the
road to the middle of the street, and at this point the
main travel swings across the tracks.

On the morning of June 14, 1912, plaintiff started
south from Burlington on horseback.   He proceeded
on the macadamized road toward Linnton at a slow
gait until he arrived at the outskirts of said town,
where he met with the accident resulting in his injury.
Plaintiff alleges that at this time he was riding on
horseback along the public highway and the main
street in the town of Linnton in a careful and prudent
manner and was passing along, over and across the
railway line and track at a point in said public high-
way and the main street in the town of Linnton when
the defendant wrongfully, carelessly and negligently,
and through want of ordinary care and prudence, and
without any or sufficient notice of warning to plaintiff,
negligently and carelessly ran one of defendant's elec-
tric cars upon and against the plaintiff and the animal
upon which he was riding with such force and violence
as to knock the animal down and throw plaintiff upon
the ground and railway track, and ran said electric car
over and upon the left foot and leg of plaintiff, which
crushed and lacerated the same to such an extent as to
necessitate amputation.

Defendant denies any negligence on its part and al-
leges that plaintiff's own negligence caused or con-
tributed to the accident resulting in the injury in that
he failed to use reasonable, ordinary care in driving
his horse upon the highway to and upon the tracks of
defendant's railway and did not take precautions to

ascertain whether a car was approaching; and that he did not take ordinary precautions to guide his horse away from the defendant's tracks when he became aware that a car was approaching.

We note excerpts of the testimony bearing upon the points contested upon this appeal as follows:

Mr. B. W. Taylor, witness for plaintiff, who took measurements and made a map of the premises (Plaintiff's Exhibit A), testified in part that the railroad runs cornerwise across the street coming in from Burlington from the north; that it comes along the edge of the street next to the high bank; that, as the track approaches the middle of the street, the travel is on both sides of the street, starting in along the lower (east) side of the track; that the street for at least 150 feet north of Lemme's store is macadamized so that travel would be practically as much on one side as the other, angling across the track, just as people took a notion; that there is a cut about 500 feet north of the store; that a car would disappear 1,200 feet north of the store; that the bulk of travel coming from Burlington crosses pretty well toward Lemme's store or from one building to another.

Plaintiff testified in his own behalf to the effect that at the time of the accident, June 14, 1912, he was coming up to Linnton from Burlington on horseback, between 9 and 10 o'clock in the morning; that he was coming into the town on the east side of the track, and when about five feet from the track, as he went to cross the railroad, he looked forward and backward and listened for a car; that he did not see nor hear any car back of him; that his horse was walking slowly and following the beaten tracks made by the wheels; that he continued along angling across the track, and that somewhere between the two rails he heard something coming and looked around quickly and saw a car coming in about 200 feet back of him; that he jerked the

horse and made an effort to get him off the track, but that the horse shied, and before he could get over the track the car knocked him off the horse; that the car hit him slightly in the back and passed over his foot; that the street at this place was traveled upon both sides of the railroad; that the car was running very fast and came so quickly that he did not see how it could possibly stop; that they sounded no bell or whistle and gave no warning; that he estimated the distance from Lemme's store to the place of the accident to be about 150 feet. Joe Lemme, storekeeper, witness for plaintiff, testified that at the time of the accident the car stopped close to the store; that they went back 140 or 150 feet and found blood on the rail and a shoe heel; that the crossing is level there and wagon tracks cross the railroad at that place.

It appears from the record that the jury visited the place of the accident for the purpose of examination. Several photographs of the *locus in quo* were introduced in evidence. A. G. Smith, witness for defendant and motorman on the car, testified in substance that on June 14, 1912, as he was coming into the town he approached the crossing 1,158 feet north of town at probably 20 miles an hour and slowed down; that after he passed the crossing he whistled for the town at the whistling-post and whistled again before getting into town; that he rang the gong; that when he came near the horse it was going along all right apparently, on the road parallel with the track; that when he got up within 100 feet of the horse the man apparently heard the bell or something and looked around and pulled the left rein as though to steer for the road and the horse turned around; that it seemed as though the man became excited and pulled too hard and kicked the horse with his heel, and the horse backed up toward the track. He further stated that he applied the air on the emergency; that the horse kept backing

and the car kept going, and that the man backed the horse in just in time to have the horse's hips strike the back of the car; that he passed plaintiff about 75 or 80 feet; that at the time of the accident the speed of his car was about 12 miles per hour; that he could stop the car in about 100 feet; that there is an old house and a new house near the place of the accident; and that people cross the track there. He stated, "You can't see them until you get close," that the speed capacity of the car at full voltage was about 35 miles per hour; that they ran about 80 feet past the plaintiff after the car struck him.

W. J. Miller, witness for defendant, testified in part that at the time of the trial the travel was 30 feet farther up toward Lemme's store than it was last June.

S. E. Wright, witness for defendant, testified, in describing the manner of crossing the track, that the people cross wherever it is necessary to cross; that one could ride across there at the place of the accident if one wanted to.

W. W. Judson, section foreman, witness for defendant, testified in part that he was on the front of the car near the motorman at the time, and that when he first saw the plaintiff they were 150 feet from him and the speed of the car was from 10 to 15 miles per hour; that at the crossing 1,158 feet north of Lemme's store the speed of the car was 15 to 20 miles per hour; that the whistle for Linnton was given, but that he did not notice whether or not the motorman sounded the gong; that the plaintiff was struck about 138 feet from Lemme's store.

Charles Rhodes, conductor on the car at the time, testified that the place of the accident was about 50 feet, or a little more, north of the crossing by Lemme's store; that the road as marked on the map (Defendant's Exhibit 2) curves too sharp across the track; that the car was on time and stopped suddenly; that

the speed of the car farther back was 25 or 30 miles per hour; that the gong rang.

Chris Suganthaler, a restaurant-man, also witness for defendant, testified that he came out into the street after the car stopped and that the car was down by a little red house; ''that there was a crossing down there too.''

Mr. Osberg, section-man, testified that where they picked the plaintiff up it was level with the rail on the street side and on the inside of the rails down about four inches lower; that there was no travel across there; that one could cross on horseback.

AFFIRMED.

For appellant there was a brief over the names of *Messrs. Cary & Kerr* and *Mr. C. A. Hart,* with an oral argument by *Mr. Hart.*

For respondent there was a brief and an oral argument by *Mr. Leroy Lomax.*

MR. JUSTICE BEAN delivered the opinion of the court.

After the close of plaintiff's evidence defendant interposed a motion for a nonsuit, the denial of which is the first error assigned. There is a dispute as to the condition of the street where the accident happened. It is the contention of plaintiff, and there was evidence tending to show, that the street through the town of Linnton upon which the railway is situated is used upon both sides of the railway, and that the travel crosses back and forth diagonally from one side of the street to the other; that this condition extends north of Lemme's store for a distance of about 150 feet; and that the accident occurred along the street where the travel crossed in the manner indicated. It is the contention of defendant that the accident did not happen on the crossing at all; that there

is a regular crossing of the highway over the railroad immediately north of Lemme's store, and that in traveling south at this point the center of the crossing is opposite the door of Lemme's store; that the plaintiff and his horse were struck at a point at least 150 feet farther north where there is no crossing; that the mishap resulted from the backing of the horse across the highway and against the car as the latter was coming to a stop; that the testimony of plaintiff does not show negligence on the part of defendant.

1. Upon what basis shall we determine the question as to the nonsuit? It is a settled rule that to determine this we should consider all the evidence in the case, for the reason that, although plaintiff at the time of resting may have failed to offer proof sufficient to entitle the cause to be submitted to the jury, a ruling denying such motion will not be disturbed if the omission is supplied by the subsequent introduction of evidence: *Trickey* v. *Clark,* 50 Or. 516, 519 (93 Pac. 457); *Crosby* v. *Portland Ry. Co.,* 53 Or. 496 (100 Pac. 300, 101 Pac. 204); *Hofer* v. *Smith,* 65 Or. 145 (129 Pac. 761).

2. Mr. Elliott, in his work on Railroads, volume 3 (second edition), Section 1093, states: "As a general rule a railroad company has the exclusive right to use its own track, and one who goes upon it, without an invitation or license from the company, is a trespasser. But this rule does not apply at highway crossings, nor, under ordinary circumstances, where the track is laid longitudinally upon the surface of a street, whether it be that of a commercial or street railroad company. The public, exercising due care, still has a right to use the street. And so the railroad company, likewise exercising due care, has also the right to use that portion of the street upon which its track is laid. Their rights are in most respects mutual, reciprocal and equal, neither being superior or paramount to the other, except that, as the company cannot so readily

stop its trains or cars and is confined to its track, it has the right of way of passage thereon, and persons who are upon the track must leave it and give way until the train or car has passed. Where the track is laid along a street, a traveler, although a pedestrian, in the exercise of due care, may cross it at any point and is not confined to the regular crossings."

The general rule in all cases, where a railroad runs along the surface of a street is that the rights of the company and of travelers must each be exercised with a due regard to the rights of the other, in a reasonable and duly careful manner. This usually depends very largely upon the peculiar circumstance of the particular case, and, in order to constitute reasonable care under the circumstances, greater care would be required of a railroad company where its cars run along a street which is continually used by travelers than where it has the exclusive use of its track. In a recent case a commercial railroad company was held liable to one who, in walking along the track in a street but not at a crossing, had his foot fastened between a rail of the track and a plank inside the track and was run over by a train. The court held that he was not a trespasser, and that the company was negligent both in failing to properly construct and maintain the track and in the management of the train: 3 Elliott, Railroads (2 ed.), § 1094.

As to the rate of speed, Mr. Elliott says in Section 1160: "In the absence of any statute or ordinance upon the subject, no rate of speed is negligence *per se*. But when considered in connection with other circumstances, as it must be in some cases, the court may sometimes be justified in declaring that the company was guilty of negligence in running its train at an excessive and dangerous rate of speed under the circumstances of the particular case. Ordinarily, however, the question is one of fact for the jury. * * A high

rate of speed may be perfectly proper at country crossings, although it might be considered negligence at a crossing in a populous city."

The railroad company should regulate the rate of speed of its cars with proper regard for the safety of human life and property, especially when running through towns and cities, even at places where there are no public crossings: 2 Thompson, Neg., § 1874.

3. It is contended on behalf of defendant that the testimony of the plaintiff describing the circumstances of the accident and the speed of the train was incompetent and not sufficient to be submitted to the jury. In White, Personal Injuries on Railroads, Section 104, we find it stated that, when properly in issue in a given case, it is generally held competent to establish the speed of trains by anyone familiar therewith, whether experts or not. And for this purpose also the schedule time of a train over its entire run may be shown, the distance and time consumed by a round trip of the train, or the time made just before or after a given place was passed, as bearing upon the rate of speed made at such place. No objection was made to the testimony of plaintiff upon this subject, and it appears that he described the circumstances at the time of the injury fully. The defendant appeared to understand this and introduced evidence tending to show the rate of speed at the crossing some distance north of where the accident occurred, and also at the place. The case differs from that of *Yingst* v. *Lebanon & A. St. Ry. Co.*, 167 Pa. 438 (31 Atl. 687), relied upon by defendant.

4, 5. The complaint made is as to the weight of plaintiff's evidence rather than its competency. It therefore became a question for the jury. A similar statement may be made as to the condition of the street at the place where the injury was received, which, as counsel for defendant state in their brief, was vigor-

ously contested. The mere proof of an accident does not *per se* prove negligence, but proof of the accident, together with facts and circumstances from which the jury may fairly infer that the accident happened by reason of an alleged negligent act or omission of defendant, is sufficient: *Hecker* v. *Oregon R. Co.*, 40 Or. 6, 10 (66 Pac. 270); *Geldard* v. *Marshall*, 43 Or. 438, 444 (73 Pac. 330); *Lillstrom* v. *Northern Pac. R. Co.*, 53 Minn. 464 (55 N. W. 624, 20 L. R. A. 589).

The jury, having heard all the evidence and having examined the premises, were peculiarly qualified to pass upon this disputed question. We have nothing to do with the conflict in the evidence. The record contains about 250 pages of printed evidence which we have carefully read. There is a direct conflict in the testimony as to whether or not any signal or warning was given to the plaintiff at the time he was seen by the motorman. There is not so much difference in regard to the exact place where the accident happened as to the condition of the street at that point. The jury could reasonably have concluded that the accident was within the town of Linnton where the defendant should use reasonable care in the operation of its cars. In the passage of cars through towns, cities and villages, the management thereof should be consistent with the safety of the passengers and those who have occasion to cross the track in traveling with due care upon the highway: 2 Thompson, Neg., § 1873.

6. Where a motorman of a car has a clear and unobstructed view of a traveler on the track and fails to give warning to the traveler of the car's approach, he is negligent, though the place of the accident was not at a street crossing. Employees in charge of a motor car are bound to keep a lookout along its tracks, where persons are likely to be found, in order to give proper signals in case of danger: Nellis, Street Railways, § 380.

7. If the jury believed the statement of the plaintiff that at the time of the casualty he was crossing the track and trying to get off, this, in connection with the evidence of the motorman that he saw the plaintiff when the car was about 100 feet from him, may have caused the jury to believe that the motorman had time to stop the car before striking plaintiff's horse, as the motorman says he could stop the car within 100 feet. There is a conflict in the evidence in this regard; the motorman asserting that plaintiff was upon the highway at the side of the railroad and backed his horse against the car. This question was for the jury to solve. The speed of the car was not the only matter for the jury to consider in order to determine whether or not the defendant was negligent. Negligence of defendant is predicated upon excessive speed and lack of warning in the operation of the car at a place where people customarily crossed the railway tracks. Even the maps offered in evidence by the respective parties exhibit the *locus in quo* with a marked difference. As explained they appear to be correct, as far as they show.

8. For the guidance of trial courts and attorneys, we mention that much of the evidence given relates to the maps. The witnesses indicated to the jury; the reporter noting the word "indicating," without the record showing what the indications were or to what place on the map they referred. This makes the record extremely difficult for us to understand. When a witness refers to a map or exhibit he should be required to designate thereon, or by language, to what reference is made and in such a manner that the whole testimony can be considered from the record.

9. Defendant asserts that the trial court erred in giving the following instruction: "If you find from the evidence that the railroad track of the defendant at the point where the accident occurred is laid or located

upon the public highway or street in the town of Linnton, then the plaintiff would have the right to pass over the track, in the exercise of due care, and would not be confined to any regular or particular crossing." Defendant complains that this instruction would require the company to operate its cars along this highway all the way from Portland to Burlington with the same speed and care as when upon the streets of the city. The instruction, however, refers to the "street in the town of Linnton," and, taken with the other instructions to the jury, we think was proper and fair under the evidence.

Finding no error in the record, the judgment of the lower court is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.