Argued November 12, 1919, modified January 13, rehearing denied March 2, 1920.

## CORNELY *v.* CAMPBELL.[*]

(186 Pac. 563.)

**Vendor and Purchaser — Payments Recoverable upon Rescission by Agreement or Rescission by Vendor.**

1. Generally, if land sale contract is rescinded by mutual arrangement and consent, without any agreement for forfeiture, or by wrongful act of the vendor, acquiesced in by the purchaser, purchaser is entitled to recover payments made by him.

**Vendor and Purchaser—No Recovery of Payments by Purchaser upon Forfeiture for His Default.**

2. Where vendor does not waive purchaser's default, but declares a forfeiture under contract providing therefor and making time of the essence of the contract, purchaser cannot recover payments already made.

[*]On right of vendee to recover payments made, on rescission of contract by vendor, see note in L. R. A. 1918B, 547.     REPORTER.

**Trial—Requested Instructions as to Right to Recover Payment Improper as Ignoring Other Party's Theory of the Case.**

3.  In purchaser's action to recover payment on ground of rescission, where vendor denied rescission and claimed a forfeiture for nonpayment of installment due subsequent to alleged rescission, requested instruction that purchaser could not recover if defendant retook property upon default by purchaser *held* improper in ignoring purchaser's theory of the case.

**Vendor and Purchaser—Evidence Sufficient to Warrant Instruction as to Wrongful Repudiation of Contract by Vendor.**

4.  In purchaser's action to recover payment on ground of mutual rescission, instruction that vendor's wrongful repudiation of contract acquiesced in by purchaser effected a mutual rescission *held* warranted by the evidence.

**Vendor and Purchaser—Purchaser Recovering Payment not Entitled to Interest.**

5.  Purchaser is not entitled to interest on payment recovered following mutual rescission of contract.

**Vendor and Purchaser—Wrongful Declaration of Forfeiture Entitled Purchaser to Treat Contract as Ended.**

6.  If vendor under contract giving him the right to declare a forfeiture wrongfully declared a forfeiture where in fact no ground existed therefor, the attempted forfeiture was in effect a refusal to proceed further with the contract entitling purchaser to stand upon his rights under the contract or treat it as ended.

**Vendor and Purchaser—Instruction not Objectionable in Purchaser's Action to Recover Payment Made.**

7.  In purchaser's action to recover payment on ground of mutual rescission, where vendor denied rescission and claimed forfeiture for default in payment due subsequent to date of alleged rescission, instruction *held* not subject to objection that it submitted question whether there was a default on such subsequent date.

**Appeal and Error—Appellant not Prejudiced by Instruction Leaving to Jury Undisputed Fact of Default by Other Party Waived by Appellant.**

8.  In purchaser's action to recover land contract payments on ground of mutual rescission, although evidence of at least a technical default by plaintiff appellee prior to date of alleged mutual rescission was undisputed, appellant was not injured by an instruction leaving to the jury the question whether or not there was such a prior default, where the evidence and pleadings showed conclusively that such prior default had been waived.

**Vendor and Purchaser—No Forfeiture After Waiver of Default Without Giving Purchaser Opportunity to Perform.**

9.  Vendor could not declare a forfeiture for default which he had waived without first giving purchaser notice and an opportunity to perform.

**Vendor and Purchaser—Acceptance of Overdue Payment Waiver of Default.**

10. Vendor's acceptance of payment after due date amounted to a waiver of purchaser's default in making payment at specified time.

**Pleading — Defect in Complaint of Purchaser Suing for Payment Cured by Answer.**

11. In purchaser's action to recover payment on ground of mutual rescission of contract, failure of plaintiff to allege that a default on payment at specified time had been waived was cured by defendant's answer showing that payment had been accepted, and therefore that default had been waived.

**Vendor and Purchaser—Evidence of Quality of Land Admissible in Purchaser's Action to Recover Payment for Mutual Rescission.**

12. In purchaser's action to recover payment on ground of mutual rescission, where complaint alleged the land was of poor quality, so that the value of the use of the land during the time the plaintiff purchaser was in possession was negligible, and, not equaling the value of improvements made and work done on the land by plaintiff, together with plaintiff's expenses, no *accounting* was *necessary* to place defendant *in status quo,* and such allegation was denied, evidence as to quality of the land *held* admissible.

**Evidence—Answer in Former Action Between the Parties Admissible as an Admission.**

13. In purchaser's action to recover payment on ground of mutual rescission of contract in year of 1912, where vendor denied such rescission and claimed a forfeiture in year 1913, an answer by vendor in a previous suit between the parties *held* admissible as an admission for purpose of showing from allegations therein that contract was rescinded in 1912.

**Appeal and Error—Admission of Evidence as to Conversation Between Parties at Making of Contract Harmless Action to Recover Payment Made Under Contract.**

14. In purchaser's action to recover payment on ground of mutual rescission of contract, involving issue of whether contract was rescinded or forfeited, admission of evidence as to a conversation between the parties at time of original transaction with reference to recording of the contract *held* not prejudicial to vendor.

**Appeal and Error—Defendant's Evidence Considered in Passing upon Action of Court in Denying Nonsuit.**

15. Where defendant has not rested on a motion for a nonsuit, but has introduced testimony in his own behalf, that evidence can be considered to sustain a recovery on the part of the plaintiff.

**Evidence—Credibility of Witness for Jury.**

16. Jury had a right to believe either of two witnesses giving conflicting testimony or to believe part of the testimony of each one of the witnesses and disbelieve the remainder of their testimony if they thought it was unreasonable or if there was a conflict between it and other direct testimony.

**Vendor and Purchaser—Whether Mutual Rescission or Forfeiture for Jury.**

17.   In purchaser's action to recover payment made on ground of mutual rescission, where vendor denied mutual rescission and claimed a forfeiture, evidence *held* sufficient for submission of case to jury.

**Appeal and Error — Court will Eliminate Objectionable Interest Allowed by Judgment Instead of Reversing.**

18.   Under constitutional amendment of 1910 (Article VII, Section 3) giving Supreme Court right to eliminate objectionable portion of judgment, the court, in holding the judgment erroneous in including interest, will deduct from judgment the amount that might have been allowed as interest and affirm judgment as modified subject to respondent's acceptance of such reduction.

### ON PETITION FOR REHEARING.

**Vendor and Purchaser—Complaint to Recover Payment on Land Contract Held to Allege Mutual Rescission.**

19.   A complaint to recover payment made on a contract for the purchase of land, which alleged that defendant repudiated the contract, and that plaintiff had elected to accept defendant's repudiation as a mutual rescission, is sufficient, in the absence of a motion to make more definite and certain, to allege rescission by mutual agreement, though the plaintiff's election was not alleged to have been made at the time of defendant's repudiation.

**Appeal and Error — Finding Necessary to General Verdict must be Assumed, if Evidence Could Support it.**

20.   If the evidence could on any reasonable hypothesis support a finding for plaintiff on a material issue, such finding by the jury must be assumed to support the general verdict for plaintiff.

**Vendor and Purchaser—Testimony of Defendant as to Rescission Held Sufficient to Support Finding Against Him.**

21.   Testimony by defendant vendor that he had declared a land purchase contract forfeited and had burned it up, and that he had notified plaintiff to move off the land, which plaintiff agreed to do as soon as he could rent a place, is sufficient to support a finding of mutual rescission in an action to recover payments made by plaintiff.

**Appeal and Error—Contentions of Party are not Binding on Court.**

22.   It is no ground for rehearing that the opinion does not follow the contentions of counsel for the successful party, since the court is governed by fixed principles of law, not by the contentions of counsel.

**Vendor and Purchaser—Vendor's Words or Conduct Indicating Intention not to be Bound Warrant Rescission by Purchaser.**

23.   Words or conduct by the vendor, indicating an intention to be no longer bound by the contract, is a sufficient repudiation to warrant the other in rescinding.

From Marion: PERCY R. KELLY, Judge.

Department 2.

This is an action brought by the plaintiff to recover the value of certain land in Marion County, Oregon, turned in to the defendant by him, as a part payment upon a certain other tract of land situated in Polk County, Oregon, which he was purchasing from the defendant.

The provisions of the contract, which are material upon this appeal, are as follows:

"THIS AGREEMENT, made this 11th day of Feb. 1911, between H. G. Campbell of the county of Polk, State of Oregon, party of the first part, and Joseph A. Cornely, of the second part, witnesseth; that in consideration of stipulations herein contained and payments to be made, as hereinafter specified, the party of the first part hereby agrees to sell unto the party of the second part, the following described real property: * * For the sum of Twelve thousand five hundred Dollars, on which said party of the second part has paid the sum of Three thousand five hundred Dollars, and the said party of the second part, in consideration of the premises, hereby agrees to pay to the said party of the first part at Dallas, Polk County, Oregon, the remaining principal, with interest at the rate of 6 per cent per annum, at the times and in the manner following: $1000.00 Jan. 1st 1913—$500.00 Jan. 1st 1914—$500.00 Jan. 1st 1915 —$500.00 Jan. 1st 1916—$500.00 Jan. 1st 1917 and $500.00 of said principal on the first day of Jan. for each and every year thereafter, together with all accrued interest to be paid on the first day of Jan. for each and every year from the date hereof until the full amount of principal and interest is paid. * *

"All improvements placed thereon shall remain and shall not be removed before final payment be made for above described premises. In case the said party of the second part, his legal representatives or assigns, shall pay the several sums of money aforesaid, punctually and at the several times above specified, and

shall strictly and literally perform all and singular, the agreements and stipulations aforesaid, according to the true intent and tenor thereof, then the said party of the first part will make to the said party of the second part, his heirs or assigns, upon request and upon the surrender of this agreement, a deed conveying said premises in fee simple with the ordinary covenants of Warranty; excepting however, from the operation and subject matter of said covenants, the before mentioned taxes and assessments and all liens and encumbrances created or imposed by said party of the second part or his assigns. But in case said party of the second part shall fail to make the payments aforesaid, or any of them, punctually and upon strict terms, and the times above specified, without any failure or default, the time of payment being declared to be the essence of this agreement, then the party of the first part shall have the right to declare this agreement null and void, and in such case all the rights and interest hereby created or then existing in favor of the said party of the second part, or derived under this agreement shall utterly cease or determine, and aforesaid premises shall revert to and revest in said party of the first part, without any declaration of forfeiture or act of re-entry, or without any other act by said party of the first part to be performed, and without any right of the said party of the second part of reclamation or compensation for money paid on improvements as absolutely, fully and perfectly as if this agreement had never been made.''

The plaintiff alleges in substance that some time in the fall of 1912, the defendant ''decided to abandon and repudiate said contract and to deprive the plaintiff of his interest thereunder,'' and rescinded the same, and that the plaintiff acquiesced in said cancellation and rescission, and that the contract was thereby ended, and the plaintiff brings this action to recover $3,500, the alleged value of the Marion County property transferred to the defendant.

The defendant, on the other hand, while admitting the contract had been terminated, claims and alleges that it was terminated by the failure of plaintiff to make his payments, as provided in the contract, and by a forfeiture of the contract, declared by the defendant on account of such failure.

The case was tried before a jury who returned a verdict in favor of the plaintiff for $3,500 and $150 interest, and there was a judgment on the verdict, from which the defendant appeals to this court.

The defendant moved for a nonsuit and for a directed verdict in the court below, both of which motions were overruled, and the ruling upon these motions is assigned as error here.

The appellant also alleges error of the court below in the giving and refusing of instructions and in certain rulings upon the admission of evidence.

MODIFIED.

For appellant there was a brief with oral arguments by *Mr. Oscar Hayter* and *Mr. Arthur L. Veazie.*

For respondent there was a brief over the names of *Mr. Walter C. Winslow* and *Messrs. Smith & Shields,* with oral arguments by *Mr. Winslow* and *Mr. Roy F. Shields.*

BENNETT, J.—The case, as submitted to the jury, seems to have turned upon the question of whether the contract was terminated by a mutual agreement to rescind, upon the one hand, or by a rightful declaration of forfeiture, for nonfulfillment by the purchaser upon the other.

1. It seems to have been assumed by the court below that if the contract was rescinded by mutual arrange-

ment and consent, without any agreement for forfeiture or by the wrongful act of the defendant, acquiesced in by the plaintiff, the parties were entitled to be placed *in statu quo,* and that the plaintiff would then be entitled to recover the value of the property turned in by him as a payment. (The defendant having disposed of that property before the commencement of this action.) This view of the law seems to be sustained by the authorities.

In 39 Cyc. 2001, it is said:

"When the proposed contract * * has been rescinded by mutual consent, by the vendor, or by the purchaser under a right to do so, the purchaser may sue the vendor to recover the money which has been paid by the purchaser to the vendor."

And again on page 2002:

"Where the parties mutually agree to rescind the contract, there being no express stipulation with reference to the payment or payments already made thereunder, the law will imply a promise on the part of the vendor to refund such payment or payments to the purchaser, and the latter may maintain an action to recover back the same."

And again on page 2003 and 2004:

"Where a contract for the sale of land is rescinded by the vendor, the purchaser is ordinarily entitled to repayment of the purchase money paid, and may maintain an action against the vendor to recover the same. So where the vendor does some act which amounts to a rescission of the contract, the purchaser may recover back the payments made by him."

In *Maffet* v. *Oregon & Cal. R. R. Co.,* 46 Or. 443, 457 (80 Pac. 489, 494), it is said:

"Treating the defendant's declaration that the contract is canceled, and no longer of any force or effect, as an abandonment, the plaintiff might himself aban-

don, and, the contract having thus come to an end; he might very well, as he has done, sue at law to recover what he has paid: *Glock* v. *Howard & W. Colony Co.,* 123 Cal. 1, 10 (55 Pac. 713, 719, 69 Am. St. Rep. 17, 43 L. R. A. 199). Mr. Justice HENSHAW, in further consideration of this case, says: 'There have been many cases before this court involving the rights of parties to agreements for the sale and purchase of real estate, in which it has been held that, after the parties have rescinded the agreement or mutually agreed to abandon, the vendee may recover the money which he paid in part performance of his contract'; citing cases. This court, however, has settled the principle by the language of Mr. Chief Justice MOORE in *Graham* v. *Merchant,* 43 Or. 294, 304 (72 Pac. 1088, 1090), as follows: 'When a vendor abandons his contract to convey, the vendee, in his choice of remedies, may elect to rescind the contract, and thereupon maintain an action at law to recover what he has paid thereon as money had and received.' Thus it is that an abandonment by one party may be treated as a proposition to rescind by the other and thereupon he may also abandon, and thus arrive at a mutual agreement to rescind, and the law so treats the correlative acts of the parties.''

2. On the other hand, if the purchaser is in default and that default has not been waived by the vendor, and the vendor rightfully and in accordance with law and the terms of the contract, declares a forfeiture of the same, where the contract makes time of the essence of the contract, and provides for a forfeiture of the payment, the purchaser cannot recover back the payment already made, in an action of this kind.

In passing upon the case we shall only consider the rulings and instructions insisted upon as error in appellant's brief.

The thirteenth exception of the defendant is based upon the following instruction asked for by the defendant and refused by the court:

"If the defendant retook the property upon default in payment, under the terms of the written contract, such resumption of possession was not a rescission of the contract *and previous payment therefor cannot be recovered by the plaintiff.*"

We have italicized the last clause of the instruction, because it made plaintiff's right to recover, turn entirely upon the conditions under which the defendant actually retook possession of the property, and entirely ignored the plaintiff's contention that the contract was ended and terminated, by what amounted to a mutual rescission thereof, entirely independent of, and previous to the retaking of possession, some time in the summer or fall of the year 1912.

3. It is obvious, that if the contract was terminated by abandonment on the part of the defendant, acquiesced in by the plaintiff, or by mutual arrangement and consent, in 1912—the fact that defendant afterwards took possession of the property in forfeiture of the contract in February, 1913, would not and could not destroy plaintiff's right of recovery. In other words, the instruction made the case turn absolutely upon defendant's theory of the case and ignored that of the plaintiff.

The court charged the jury:

"A party who has advanced money or done an act in performance of an agreement and then stopped short and refused to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, is not suffered to recover for what has been advanced or done."

This was as favorable to the defendant in this regard as he could reasonably ask.

The fifteenth exception refers to an instruction asked by the defendant and modified by the court. The defendant asked the court to instruct the jury:

"Before the plaintiff can recover in this action he must show either that he was not in default or that he was ready, willing and able to perform."

The court modified the instruction by adding after the word "default," "or that his default was waived by defendant," and also by adding the word "it" at the end of the instruction.

The addition of the clause "or that his default was waived by defendant" was clearly pertinent to the real issue in the case, and was we think a proper modification.

If the contract was terminated by abandonment on the part of the defendant and mutual rescission in the fall of 1912, as contended by the plaintiff, then there had clearly been a waiver of the default on January 1st of that year, by the acceptance of payment after that time. Indeed, the defendant does not seriously contend that the default on January 1, 1912, was not waived. Under the circumstances the court could not very well give the requested instruction as asked without modification. The addition of the word "it" at the end of the instruction does not, as far as we can see, affect the meaning one way or the other and we do not think the jury could have misunderstood the instruction.

The sixteenth exception refers to the following instruction given by the court:

"If the vendor in a contract for the sale of real estate wrongfully repudiates the contract, and without just cause or reason announces that he will not be bound thereby, and wrongfully insists and maintains that the vendee's interest has been forfeited, this would

amount to a renunciation of the contract by the vendor, and the vendee would thereupon have a right to acquiesce in such renunciation of the contract, and thereby effect a mutual rescission of the agreement.

"In this case, if you find from the evidence that the defendant did, as alleged by the plaintiff in his complaint, repudiate the contract in question while it was still in force, and without reason therefor announce and maintain that the same had been canceled and surrendered, and that he would no longer be bound thereby, such acts would evidence an intent to repudiate the contract on the defendant's part, and the plaintiff would have the right to acquiesce in such repudiation as a mutual rescission of the contract."

4. It is strongly urged on behalf of defendant that there was no evidence to sustain this instruction or upon which it could properly be based. But the defendant himself testified that along some time in the summer or fall of 1912 the plaintiff came to him at his office and delivered up his contract and that he then and there burned the contract. He claims at that time the plaintiff agreed to forfeit the contract. This the plaintiff denies. Defendant testified:

That at this time he considered the contract forfeited; that he "notified the plaintiff at different times to get off the place. The contract was forfeited at that time and I notified him at different times I wanted him to move off of the place."

Defendant testified at another place that he told plaintiff:

"Joe, I see you haven't moved. What is the reason you ain't moving off of the place?"

And still at another place he says:

"I only asked him something about moving off the place and when he was going to get off. * * After I got the place back—that is, I considered having it back—I had the contract that he was living on the place

yet; I sent men out to do some work on the place and try to dig a new well.''

The sufficiency of the evidence in this regard will be further considered later in passing upon the motion for nonsuit.

The seventeenth exception refers to the following instruction given by the court:

''Under a contract for the sale of lands rescinded by mutual consent, the rights of the parties under such contract are extinguished. The seller acquires the equitable interest formerly owned by the purchaser, but he cannot, after the rescission, maintain an action for the purchase price. The purchaser is entitled to a return of the purchase money. The seller is ordinarily entitled to a fair rental value for the use and occupation of the lands, less the value of permanent improvements placed thereon by the purchaser, and disbursements for taxes, if any. The value of the improvements is to be estimated by the extent to which they have enhanced the value of the land.

''In this case if you find that in fact the contract in question was terminated by the parties by acts or conduct amounting to a mutual rescission of the same, as defined in these instructions, then the plaintiff would be entitled to recover a sum equal to the value of the property transferred by him to the defendant and money paid by him to the defendant, less a fair rental value for the use and occupation of the land during the time it was in the possession of the plaintiff, and less the payment of two hundred dollars made by defendant to plaintiff, with interest on the same, derived in this way, from the date of the rescission, if a rescission has been proven.''

The foregoing instruction seems to authorize the jury to allow the plaintiff interest on the payment made by him for the transfer of the Marion County land, from the date of the rescission, to the date of the trial. This seems to have been error.

5. The law seems now to be well settled in this state that upon a claim of this kind no interest can be allowed: *Sargent* v. *American Bank & Trust Co.,* 80 Or. 16 (154 Pac. 759, 156 Pac. 431). The case of *Graham* v. *Merchant,* 43 Or. 294 (72 Pac. 1088), relied upon by the plaintiff, was decided before the Sargent case and is practically overruled by that case and the case of *Holz* v. *Olds,* 84 Or. 567 (164 Pac. 583, 1184).

This error seems to have been prejudicial to the defendant, for the jury clearly must have understood that they could allow interest on the price of the Marion County land, and they evidently did allow some sum as such interest.

This instruction also authorized the jury to allow the plaintiff the small interest payments which he had made on the contract and which were not mentioned in plaintiff's complaint.

The instruction referred to in the eighteenth exception seems to have been fully covered in what we have already said and we think there was no error of the court below in giving the same.

The instruction covered by the nineteenth exception was in reference to the effect of the forcible entry and detainer proceeding in the Justice's Court upon the rights of the parties, and virtually told the jury that that proceeding was in no way decisive of the right of the plaintiff to recover back the money he had paid on the transaction. We think there was no error in these instructions.

The twentieth exception refers to the following instruction given by the court:

"The contract in question in this case provides that upon the default of the purchaser, the seller shall have a right to declare a forfeiture of the contract. If the seller under such a contract wrongfully attempts such

forfeiture when in fact no ground therefor exists, such attempted forfeiture would amount to a breach of the contract upon the part of the seller, and entitle the purchaser to rescind the contract.

"In this case if you find that in fact such an attempt was made by the defendant to forfeit the contract in question when the plaintiff was not in default, or if, having been in default, such default had been waived, then the plaintiff had a right to treat such attempted forfeiture as a renunciation of the contract, and consider the same rescinded, and recover back the payments made by him."

6. As an abstract proposition of law, we think these instructions were correct. A declaration of forfeiture on the part of the defendant was, in effect, a refusal to proceed any further with the contract or to allow the plaintiff any rights thereunder. The plaintiff then could stand upon his rights and insist upon a continuation of the contract; or he had a right to accept the defendant at his word, and acquiesce in the termination thereof. Such a declaration of forfeiture, if wrongful, was just as much a termination of the contract as if the defendant had said in express words, "I will not be bound any further by this contract. I will not proceed any further under it." If the defendant had done this, either by mistake or advisedly, there can be little question but what the purchaser would have a right to treat the contract as ended.

7. It is urged this instruction left it to the jury to determine whether there was a default on January 1, 1913, but we cannot follow this conclusion. The court did not say a word about the default on January 1, 1913, and if the contract was then still in existence and unbreached by the defendant, there was no question but what there was a default, and no one was contending otherwise.

The contention of the plaintiff was that the defendant had breached the contract *before* January 1, 1913, by declaring the contract at an end in 1912. There is some slight evidence offered by the defendant himself, which might have been construed as a waiver of the default in 1913, but we do not think that question is in any way presented by the record.

It is urged, however, the undisputed evidence was, that there was a default in 1912. This is probably technically true. There is no doubt that the interest for that year was not paid, and the court construed the contract as calling for a first payment of interest in January of that year. This construction was probably correct. At any rate it was favorable to the defendant.

8. The instruction does seem to submit to the jury the question whether or not there was a default in 1912, when there was no dispute in the evidence in that regard.

9. But there was evidence tending to show that the default in 1912 had been waived. In fact, we think it was admitted by defendant's own pleadings that it was waived, when he alleged he had accepted payment thereon, after the date of the default. Under the circumstances we cannot see that the defendant was injured by any error of the court in submitting that fact to the jury. The evidence and the pleadings show conclusively that the default in January, 1912, was waived, and that left it as if there was no default at all, in so far as it affects this case. The defendant could not thereafter forfeit the contract for such default without first giving notice and an opportunity to perform.

We think there was no error in the instruction which would justify a reversal in the cause. Neither do we think there was any error in the giving of the charge

alluded to in the twenty-first exception. That charge on the whole was consistent with the principles to which we have already alluded, and was as favorable to the defendant as he could ask.

10, 11. Neither do we think there was any error in the instruction presented by the appellant's twenty-second exception. It is true there was no direct allegation in plaintiff's complaint that the default in 1912 had been waived. That default only appears in the defendant's pleadings. But the defendant in his answer showed affirmatively that he had accepted payment after the date of that default, that is, the payment of $48 on January 4, 1912, and the payment of $20 on January 16, 1912. This in itself amounted to a waiver of the previous default in strict payment at the time specified, and cured any possible defect in the pleadings of the plaintiff in that regard.

The plaintiff, over the objection of the defendant, was permitted to testify as to the character and condition of the land which he had purchased from the defendant.

One of the allegations of the complaint, was:

"That the water supply thereon was exhausted and that only a small portion of said farm was in cultivation and the soil thereon was of poor quality and had not been cultivated or sowed to crops for some time previous thereto, the value of the use of said property during said time was negligible and did not equal the value of the improvements and work done, and expenses incurred thereon by the plaintiff during said time, for which the defendant received the benefit, and on account thereof no accounting for the rents and profits from said lands would be necessary to place the defendant *in statu quo.*"

12. This allegation was denied by the answer and was directly placed at issue. The evidence was perti-

nent to this allegation and its admission was not prejudicial error.

Plaintiff also was permitted to introduce in evidence a copy of an answer filed by the defendant in a previous action in the Circuit Court for Polk County and the admission of this paper constitutes one of the assignments of error. That answer contained the following affirmative allegations:

"That on or about the 1st day of August, 1912, the plaintiff informed the defendant that he desired to be released from said contract, whereupon the plaintiff and defendant entered into a further agreement whereby it was stipulated that the defendant should release the plaintiff from all further liability and obligation under said contract, and in consideration thereof the plaintiff would surrender up to the defendant his part of said contract in writing, and would surrender possession of said premises forthwith, and that thereafter neither party to said contract should have any claim or demand upon or against the other.

"That thereafter about the first day of October, 1912, the plaintiff surrendered up to defendant his part of said contract in duplicate, and that the same was thereupon in plaintiff's presence destroyed."

13. The answer was no doubt offered as an admission by defendant, to support the allegation in plaintiff's complaint that the contract had been rescinded in the summer and fall of 1912, and not in 1913 as claimed by the defendant. For this purpose it seems to have been proper and we cannot see that its admission was error.

14. One of defendant's assignments of error is that the plaintiff was permitted to testify as to a conversation between him and the defendant about the time of the original transaction, in relation to the recording of the contract between plaintiff and defendant. This testimony was unquestionably very remote, if it had any bearing upon the case at all. The defendant claimed

to have burned the contract and that the plaintiff authorized him to do so.   The plaintiff denied this and claimed he never authorized its destruction.   We suppose the testimony was offered as tending to show that defendant was not acting fairly in the matter from the first, and that his purpose in burning plaintiff's copy of the contract, was to deprive plaintiff of any evidence, in any claim he might make for the recovery of the money.   At any rate the conversation was between the parties hereto and was in reference to the transaction, and we cannot see that defendant was in any way prejudiced by its admission.

A question is raised in the case as to alleged misconduct on the part of attorney for the plaintiff in the course of the trial.   There was a colloquy between the attorney and the defendant, while he was on the witness-stand being cross-examined, in relation to the fight between himself and the plaintiff in February, 1913.

"Q. As a matter of fact, in addition to what you said about his intoxication, he wasn't in a very good condition to converse with you at the time, was he?

"A. No, but then what are you going to do if a man jumps on you and—

"Q. (Interrupting.) You know better than that don't you?

"A. Yes, better than to let a man pull a gun on me. When he got to that point I thought I had to do something.   I think you would do that."

Thereupon plaintiff's counsel remarked to the defendant:

"I wouldn't do what the jury of Polk County said you did."

It is also claimed the attorney for the plaintiff improperly insisted upon asking repeated questions in the examination of the plaintiff while on the witness-stand

in rebuttal, after the questions had been practically excluded by the ruling of the court. We do not think, however, there was any error in relation to these matters that would justify a reversal. There seems to have been no ruling of the court adverse to the defendant upon any of them, and we do not think there is any sufficient evidence of willful misconduct on the part of the attorney for plaintiff which would justify disturbing the verdict.

In the wordy controversy, which seems to have arisen while defendant was on the witness-stand, between him and the cross-examining attorney, both said things which had no place in an orderly cross-examination, but what was said by the attorney for plaintiff was in some sense invited. As to the questions which were repeated in different forms, the attorney had a right to fully make his record for an appeal, and we cannot say that he transcended the bounds of good faith.

The defendant moved the court for a nonsuit at the close of plaintiff's case, and also for a directed verdict before the case was finally submitted. Both of these motions were denied by the court below and they may well be considered together. They present a very serious and close question, which has been very ably argued and presented upon both sides.

The correctness of the ruling of the court below depends upon whether or not there was any evidence in the case to support the contention of the plaintiff, that the defendant had terminated the contract and announced that he would not proceed further in 1912, prior to the default of the plaintiff in January, 1913.

There was ample evidence tending to show that the default in the payment of interest on January 1, 1912, was waived by the defendant, and if there was testimony to go to the jury, tending to show that the con-

tract was mutually rescinded during the year 1912, or that the defendant wrongfully declared a forfeiture during that year, and before the default of January, 1913, the case was properly submitted to the jury. There is some slight evidence tending to show a waiver of the default on January 1, 1913, but for the purposes of these motions we shall assume, that if the defendant had not breached or agreed to a rescission of the contract, prior to that time, then the motion of the defendant for a nonsuit should have been allowed.    On the contrary, it seems settled that if there was a mutual rescission during the year 1912, without any agreement as to forfeiture, or if the defendant during that year wrongfully and without sufficient notice declared a forfeiture and termination of the contract, then the plaintiff could recover.

If the defendant had stood upon his motion for a nonsuit and introduced no evidence in his own behalf, the evidence on the part of plaintiff alone would seem insufficient to have justified a recovery upon his theory of the case.    However, the defendant did not rest but introduced testimony in his own behalf, and in the course of that evidence seems to have materially strengthened the case of the plaintiff upon this crucial point.

15. It is well settled in this state that where the defendant has not rested upon a motion for a nonsuit, but has introduced testimony in his own behalf, that evidence can be considered to sustain a recovery on the part of the plaintiff, and that this court will not reverse the ruling of the court below denying a nonsuit, if upon the whole case, as presented both by the plaintiff and the defendant, there was sufficient evidence to go to the jury: *Vanyi* v. *Portland Flouring Mills Co.,* 63 Or. 520 (128 Pac. 830) ; *Caraduc* v. *Schanen-Blair Co.,* 66

Or. 310 (133 Pac. 636); *Oberstock* v. *United Rys. Co.,* 68 Or. 197 (137 Pac 195); *Weygandt* v. *Bartle,* 88 Or. 310 (171 Pac. 587).

The testimony of the defendant relied upon by the plaintiff is as follows:

"A. Why, he never come in there about October or ever did and talked to me about Leonard; he come in about that time and delivered up his conratct. * * Well, along after harvest,—along after hop picking, he come into my office and give me the contract, and told me he guessed he would have to throw the place up,—that he couldn't meet the payments, and told me he had rented a place in Marion County, and was going to move off the place and move into Marion County.

"Q. Now, what if anything, was said there in reference to returning or repaying to Cornely any amount paid on the contract or any consideration for his property in Marion County?

"A. Nothing said about that, nothing. * *

"Q. Not what you think or thought, but what the agreement was in reference to terminating this contract at that time?

"A. Nothing was said about that whatever; he simply forfeited the contract at that time. * *

"Q. What he said he was to do—

"A. He said he would forfeit the contract.

"Q. That was his statement?

"A. Yes."

This was in direct examination, and upon cross-examination he testified further:

"Q. Now, you say that along in August, 1912, Cornely came to your office in Dallas and made arrangements to stay until after harvest, and surrender his contract if he couldn't make his payments; is that correct?

"A. It was along toward harvest sometime, must have been along about July sometime; I know it was before hay harvest.

"Q. Then you say along about the first of October he came in and surrendered up his contract and said he would get off?

"A. Yes, along in the fall; I know it was after hop picking.

"Q. What did you do with his contract?

"A. I put it in the stove right there in his presence. * *

"Q. And what was said, now, between you and Cornely at that time?

"A. Mr. Cornely came in and couldn't meet the contract, and told me he would do as he agreed; he agreed to forfeit it if he couldn't make the payments, and he said he couldn't do it, and I said, very well, and I held the contract, and I says, 'Well, Joe, I guess this is all over with and forfeited; just as well stick it in the stove and end the whole matter'; and he said as far as he was concerned it was all right, and I walked back and slid back one lid and slipped her in the stove; that was all satisfactory with him; he didn't say anything to the contrary.

"Q. That wasn't all was said, was it?

"A. As far as anything I know; I can't remember any other conversation in regard to the contract. * *

"Q. Then you say that notwithstanding that fact thereafter you were ready, able and willing to go ahead with the contract just the same?

"A. Why, if he had come in in a few days and paid the money, I would been tickled to death to get it,—to take the money and let him had the ranch; I didn't want the ranch, I wanted the money.

"Q. You said on direct examination you were at all times, ready, able and willing to go ahead with the contract at the time you declared this forfeiture?

"A. Yes, sir. I was.

"Q. When did you declare that forfeiture?

"A. When he give me that contract.

"Q. Then and there?

"A. Forfeited right then and there.

"Q. What did you say about that,—that is, I am not trying to get all your language, but the substance?

"A. The contract was forfeited; I told him it was and all ended; I didn't suppose anything would be thought about it and throwed it in the stove.

"Q. That is the forfeiture you have been talking about all the time?

"A. Yes, it was forfeited then, the contract was.

"Q. That is the only forfeiture you ever declared?

"A. Well, it was forfeited at that time; I notified him different times to get off the place; the contract was forfeited at that time, and I notified him different times I wanted him to move off the place, and he told me he was going to as soon as he could rent a place, and he rented a place.

"Q. You said for a reasonable time thereafter you were willing he should come in and pay up; now how long a time afterward?

"A. Well, I don't know; I wanted the money for the place; he could come along any time within a month or two and could have paid me the money and I would have sold to him or anyone else for that same amount; his money was as good as any ones; I would have sold to anyone else on the same kind of a contract if they had paid what was back * * But the contract was forfeited right at that time.

"Q. You told him it was forfeited?

"A. Yes, and he was perfectly satisfied to forfeit it.

"Q. Did he say the word 'forfeit'?

"A. Yes; I told him I would expect him at that time, when he was in before harvest,—that I would expect him to come in in the fall and forfeit the contract if he could not pay, but in the fall he come and give me the contract and says, 'Henry, I will have to forfeit the contract; I can't meet the payments,' and he would forfeit the contract and move off the place, and he did rent a place in Marion County, and his intention at that time was good,—he intended to move off the place.

"Q. Is that your idea?

"A. Yes, that is my idea.

"Q. You have never recognized that contract from that time on, then?

"A. No, no.

"Q. This testimony you gave here pursuant to counsel's questions, in reference to a conversation that took place about the first of January, 1913, was clearly not in recognition of the contract then, according to your theory?

"A. I didn't consider he had any right on the place after that time.

"Q. On this surrender of the contract, then, as you now want to describe it, was a clear forfeiture of the contract within the terms of the contract, I presume?

"A. Yes, sir, according to my idea.

"Q. And that was the transaction and all the transaction as you describe it?

"A. At that time, yes, sir.

"Q. But it was never modified at any other time, was it?

"A. No, it was not. * *

"Q. That was a long time after this October instance you referred to where you say the contract was forfeited?

"A. I told him if he could find anyone to actually buy that place and pay me everything that was back I would give him a new contract.

"Q. The same kind of a contract he had before?

"A. One similar, yes, but this contract was all forfeited; it would have to be a different deal and transaction, altogether.

"Q. You explained that to him?

"A. Yes, sir.

"Q. Did you tell him on what terms you would make that deal if he could get a purchaser?

"A. He didn't have any.

"Q. You knew as a matter of fact he was trying to get one, didn't you?

"A. He was still living out there.

"Q. You knew he was trying to sell it?

"A. I was trying—

"Q. (Interrupting.) You were trying to sell it for him?

"A. No, for myself.

"Q. Up to the time he forfeited the contract—thereafter all your efforts were in your own behalf?

95 Or.—24

"A. They were.

"Q. Then, as I understand it, up to the time he came in your office and delivered his copy of the contract to you,—up to that time you hadn't only known he had been trying to sell it, but you were trying to sell it for him,—his interest in it?

"A. Up to the time he delivered up his contract.

"Q. But thereafter you promised him that if he could make a deal you would still make another contract and recognize his interest?

"A. I told him I would give the other man a contract."

The plaintiff was called in rebuttal and denied that there was any talk about forfeiture of the contract at the time the contract was burned.

16. Of course the jury had a right to believe either of the witnesses or to believe part of the testimony of each one of the witnesses, and disbelieve the remainder of their testimony if they thought it was unreasonable or if there was a conflict between it and other direct testimony.

17. We think, on the whole, this testimony, with the denial of the plaintiff that there was any talk of forfeiture, was sufficient to carry the case to the jury as to whether there was a mutual rescission (without any agreement of forfeiture), and as to whether there was a wrongful forfeiture by the defendant during the year 1912, afterwards acquiesced in by plaintiff.

It is true the plaintiff remained in possession until 1913, but that was not necessarily inconsistent with a termination of the contract. According to defendant's own testimony he had announced that the contract was ended and the plaintiff had tacitly agreed. He also claims that at different times in the year 1912 he talked to the plaintiff about moving off and the plaintiff, impliedly at least, agreed to do so. He also testified he considered that, after October, 1912, the plaintiff had

no absolute right to the property, and that the plaintiff was remaining there trying to sell the property with the understanding upon his part that if he succeeded in making a sale he would only receive a commission on the sale.

Under these conditions we think the court below could not have said, as a matter of law, that there was no evidence to support plaintiff's theory, and therefore, there was no error in submitting the question to the jury.

On account of the errors in the matter of the seventeenth exception hereinbefore referred to, and the fact that the jury under that instruction allowed the plaintiff $150 interest, which was carried into the judgment, it will be necessary that this cause be reversed and sent back for a new trial, unless we can eliminate the objectionable portion of the verdict and judgment, under the constitutional amendment of 1910, which provides:

"If, in any respect, the judgment appealed from should be changed and the Supreme Court shall be of opinion that it can determine what judgment should have been entered, in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases."

In this case the verdict of the jury was as follows:

"We, the jury in the above-entitled civil action, find for the plaintiff in the sum of $3,500, *and $150 interest.*"

18. The jury having specified the amount allowed for interest, it seems we can correct that portion of the error by reducing the amount found by the jury for interest and deducting $150 from the judgment.

But it is also possible that the jury included in the verdict for the $3,500, $145.30 which had been paid by

the plaintiff at different times as interest on the contract and which the court clearly instructed them to allow. It is true the amount of the verdict was even $3,500—the exact amount at which the Marion County land was put in on the trade. But there was evidence *pro* and *con* as to the value of these lands, and the different estimates of the value ranged all the way from. $2,500 to $3,500. It is impossible for us to say whether or not the jury allowed these payments. If they did they were misled in that far by the instruction of the court, as these payments were in no way at issue in the cause, and there is no allusion to them whatever in plaintiff's complaint.

It would avoid any possibility of injury to the defendant by the erroneous instruction, if the judgment was reduced as of the time of its entry by the $150 allowed as interest, and by the sum of $145.30 which might have been allowed by the jury, under the instruction of the court, for payment not within the issues made by the pleadings. But we cannot say that this would be justice to the plaintiff in the cause, for the reason that it may be the jury did not allow anything for these payments. It is evident the jury did not allow the defendant any credit for the $200, paid over at the time of the original transaction, and they should not have allowed him anything for that, because that was outside of the Polk County land transaction altogether. In other words, the Marion County land was valued at $3,700, over and above $1,500 encumbrance. Of this $3,700 the defendant paid the plaintiff $200 in cash, and the other $3,500 only went in on the Polk County land, so that defendant was not entitled to any credit for that $200.

Upon the whole we are of the opinion that it will be just if the plaintiff is given the option to remit the

$150 interest and $145.30, which may have been included in the verdict on account of payment on interest, and accept a judgment of $3,354.70 as of the time of the date of the judgment in the court below, or to take a new trial of the entire cause. This we may do under the constitutional provision and the authority of *Hoag* v. *Washington-Oregon Corp.*, 75 Or. 588 (144 Pac. 574, 147 Pac. 756).

If the plaintiff shall accept such reduction within ten days from the handing down of this opinion then the judgment will be so modified; otherwise, the cause will be remanded for a new trial.

In either event the appellant will recover his costs and disbursements on this appeal.    MODIFIED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.

---

Denied March 2, 1920.

PETITION FOR REHEARING.

(187 Pac. 1103.)

On petition for rehearing.    DENIED.

*Mr. Oscar Hayter* and *Mr. Arthur L. Veazie,* for the petition.

*Mr. Walter C. Winslow* and *Messrs. Smith & Shields, contra.*

Department 2.

BENNETT, J.—Upon the original hearing we tried to give every one of the many specifications of error careful consideration. The appellant, however, has

filed a petition for a rehearing, accompanied by a very able and ingenious brief, in which it is again strongly urged that a mutual rescission in 1912 was not pleaded or relied upon by the plaintiff, and that there was no sufficient evidence of such rescission, or that a forfeiture during that year was declared by the defendant or accepted by the plaintiff.

19. The allegations of the complaint are not entirely clear or definite, it is true; but there was no motion to make more definite and certain, and the parties went to trial as the pleadings stood. We find in the complaint the following allegations:

"That thereafter the defendant decided to abandon and repudiate said contract and to deprive the plaintiff of his interest thereunder, and in pursuance thereof, did, *during the latter part of the year 1912,* repudiate said contract, and, without reason therefor, announced that the same had been canceled and surrendered *and that he would no longer be bound thereby,* * * and any further attempt or offer of performance of said contract upon plaintiff's part was waived by the defendant and would have been a vain and useless act. That on account of the defendant's course of conduct and position as hereinbefore alleged the plaintiff has elected to rescind said contract and *to accept the defendant's repudiation thereof as a mutual rescission and cancellation of said contract.*"

It is urged argumentatively that other portions of the pleading indicate that this acceptance must have been at a later date than 1912, but this is not alleged, and in the absence of a motion to make more definite and certain, we think the allegations (if supported by the evidence) were sufficient to sustain a finding that a forfeiture was wrongfully declared by the defendant and accepted by the plaintiff during the year 1912. It is true the plaintiff does not claim in his complaint

to have given up the possession of the property until February, 1913; but it does not necessarily follow that the contract had not been canceled before that date.

20. This brings us again to the consideration of whether or not the evidence could support such a finding; for, if it could, upon any reasonable hypothesis, such a finding upon the part of the jury must be assumed, in order to support its verdict, under the well-settled rules of law as to the verdict of a jury.

21. The very able brief on rehearing has not satisfied us that the evidence of the defendant himself, was not sufficient to sustain a verdict against him, both as to the forfeiture of the contract by him in 1912, and as to the acceptance of the same by plaintiff.  It will be remembered that the defendant testified on direct examination that in October, 1912, plaintiff came into his office and gave him the contract, and he put it in the stove, and on cross-examination he testified:

"Q. When did you declare that forfeiture?
"A. *When he gave me that contract.*
"Q. Then and there?
"A. *Forfeited right then and there * * The contract was forfeited.  I told him it was and all ended.* I didn't suppose any thing would be thought about it *and throwed it in the stove.  * * I notified him at different times I wanted him to move off the place and *he told me he was going to as soon as he could rent a place.*"

It seems plain that this was some evidence that the defendant declared the contract forfeited at this time and refused to proceed further, and that the plaintiff assented to that refusal.  It is true the defendant also testified in this connection, that plaintiff at the same time agreed to a forfeiture of his payments.  The plaintiff, when called in rebuttal, specifically denied that he

had agreed to a forfeiture, but made no direct denial that the defendant had declared the contract ended. As was said in the original opinion,

"The jury had a right to believe either of the witnesses or to believe part of the testimony of each one of the witnesses and disbelieve the remainder of their testimony, if they thought it was unreasonable."

This principle seems so well settled that it can hardly admit of doubt.

It is urged that it is improbable that the defendant would have agreed to a termination of the contract, without an understanding of forfeiture; but this is an argument which would go to the jury, rather than the court. However much we might be impressed with the reasoning of the learned attorneys for the defendant, in that regard, we could not make it a reason for interfering with the finding of the jury. It will be noticed that the defendant in the first instance did not say that there was any talk of forfeiture.

"Q. Now what, if anything, was said there in reference to returning or repaying to Cornely any amount paid on the contract or any consideration for his property in Marion County?

"A. *Nothing said about that—nothing.*"

Then, when pressed further by his counsel, he persisted that there was nothing said, but stated his conclusion, that the contract was forfeited.

"Q. Not what you think or thought but what the agreement was in reference to terminating the contract at that time.

"A. *Nothing was said about that whatever.* He simply forfeited the contract at that time."

And when he was admonished by the court that he could not state a conclusion, and was still further pressed by his attorney, he testified:

"He *said* he would forfeit the contract."

Under such conditions it is far from our province to say whether all, or any, or what part of his evidence should have been credited by the jury. It is possible that the jury may have been influenced in the case by a supposed injustice, if the defendant was permitted to take back all he had transferred, and at the same time retain the farm he had received from the plaintiff; but we cannot assume that this was so, and in the absence of some showing of bias or prejudice, we are bound to accept its finding as long as there is any evidence to support it, without regard to whether or not we would have reached the same conclusion.

22. It is urged in the brief for rehearing that the opinion does not follow the contention outlined in the brief for respondent. As we read the brief of respondent, he contends for an alternative position. One of the paragraphs of the statement in the brief is as follows:

"The contract being still in force, Campbell wrongfully renounced all liability under it, claiming that it had been canceled by mutual consent in 1912, and on account of his repudiation of the contract, Cornely elected to rescind the same thereby rendering the rescission mutual."

At any rate, it can make no difference, for we are governed by fixed principles of law, and not by the mere contentions of the parties.

23. It is urged that the repudiation of the contract by the defendant, to work a rescission, must be absolute, and that it cannot in any view of the evidence be so construed in this case. But we think it is sufficient if the words or conduct of the defendant indicated an intention to be no longer bound.

In 13 C. J., page 615, it is said:

"In determining whether there has been a repudiation of a contract by one of the parties, so as to warrant the other in rescinding, the test is whether the *acts and conduct* of the party evince an intention to no longer be bound."

In *McAllister* v. *Matthews,* 167 Ala. 364 (52 South. 417, 140 Am. St. Rep. 43), it is said:

"One party may so wrongfully repudiate the contract as to authorize the other to renounce it and refuse to be longer bound thereby. This happens when the acts and conduct of one of the parties evinces an intention to no longer be bound by the contract."

The testimony of defendant that he declared the contract "all ended," and that he burned it up, and afterwards insisted upon the plaintiff removing from the premises, was entirely sufficient to carry the case to the jury in this regard.

The rehearing is denied.

MODIFIED.  REHEARING DENIED.

MCBRIDE, C. J., and BEAN and JOHNS, JJ., concur.