Argued December 20, 1921, affirmed January 24, 1922.

## JOHNSON *v.* UNDERWOOD et al.

(203 Pac. 879.)

**Municipal Corporations—Occupant of Automobile Driven by Another must Exercise Ordinary Care for Own Safety.**

1. An occupant of an automobile operated by another is required by law to exercise ordinary care for his own safety.

**Trial — On Motion for Nonsuit, Plaintiff's Evidence must be Considered as True.**

2. On motion by defendant for a judgment of nonsuit, the testimony on behalf of plaintiff, together with all the presumptions and inferences legitimately deducible therefrom, must be considered as true.

**Appeal and Error—Defendant's Evidence may Cure Error in Overruling Motion for Nonsuit.**

3. Where defendant's motion for nonsuit is overruled, but he did not rest upon the motion, the evidence introduced by him may be considered in order to sustain a recovery on the part of the plaintiff, and the denial of nonsuit will not be reversed, where the whole case as presented by both plaintiff and defendant shows sufficient evidence to take the case to the jury.

**Trial — Introduction of Evidence by Defendant Does not Waive Motion for Nonsuit.**

4. The introduction of evidence by defendant does not waive his motion for nonsuit, unless such evidence cured the defects, if any, in the plaintiff's case.

**Evidence—Witness Without Special Qualification can Testify to Speed, but Evidence is not of Much Value.**

·5. A witness who had never owned or operated an automobile, and who revealed no special qualification as to ability to judge the

---

5. Opinion evidence as to speed of automobile, see notes in 19 Ann. Cas. · 754; Ann. Cas. 1917D, 613.

speed of the car, was competent to testify as to such speed, though the car in which she was riding had no speedometer, but her testimony was not of great value.

### Negligence—Contributory Negligence Bars Recovery.

6. If it appears from the testimony offered by the plaintiff in an action to recover damages for personal injury that the person sustaining the injury was guilty of negligence without which the injury would not have happened, such proof as a matter of law will defeat a recovery.

### Municipal Corporations—Evidence Held not to Show Contributory Negligence as a Matter of Law.

7. In an action for death of occupant of automobile driven by another when another automobile collided therewith, evidence as to the speed and relative positions of the two automobiles as they approached the street intersection, *held* not to show as a matter of law that plaintiff's decedent was contributorily negligent.

### Evidence—Acts and Declarations in Party's Presence Admitted on Theory His Failure to Act was an Admission.

8. Section 727, paragraph 3, Or. L., making admissible evidence of declaration of act by another in the presence of a party, and the party's conduct in relation thereto, is based upon the rule that the silence or omission to act by the party with reference to such acts in his presence is in effect an admission by him.

### Evidence—Declarations of Others at Time of Accident not Admissible Against Administratrix.

9. In an action for the death of plaintiff's decedent caused by an automobile collision, the declarations and acts of others after the collision are not admissible against plaintiff, since no admission by decedent can be implied therefrom.

### Evidence—Silence of Administrators Before Appointment not Binding in Representative Capacity.

10. In an action by an administratrix for the death of her intestate, acts and declarations by others, at the time of the accident, when plaintiff was personally present, are not binding upon her in her representative capacity, and therefore are not admissible against her.

### Evidence—Admissibility of Declarations in Party's Presence is Court Question.

11. Whether the situation is one from which the jury could reasonably find that a party's conduct was relevant to the issues so as to render such evidence admissible is a preliminary question for the court.

### Evidence—Question as to Manner of Collision Predicated on Appearance of Car Held Inadmissible.

12. In an action for injuries in an automobile collision, a question asked a witness as to whether the appearance of the running-board as shown in a picture would necessarily indicate that it was hit by the other machine was objectionable as calling for the opinion of the witness.

Trial—Requested Instructions as to Effect of City Ordinances Held Covered.

13. In an action for injuries resulting from an automobile collision at a street intersection, instructions, requested by defendant as to effect of the city ordinances regulating traffic, *held* covered by an instruction that if the jury found the ordinances to exist any defendant violating such ordinances would be guilty of negligence.

Appeal and Error — Submitting to Jury Existence of Ordinance Alleged and Proved is Favorable to Defendant.

14. In an action for injuries resulting from an automobile collision at a street intersection, error in an instruction which submitted to the jury the question whether certain city ordinances had been pleaded by both parties imposed an additional unnecessary burden upon plaintiff, and was not prejudicial to defendant.

From Multnomah: GEO. G. BINGHAM, Judge.

Department 2.

This is an appeal from a judgment for damages resulting from the death of one Gustav Johnson.

On November 21, 1919, two motor-cars collided at the intersection of Powell Valley Road with East 82d Street, Portland, Multnomah County, Oregon, with the result that Johnson was hurled from the car in which he was riding and instantly killed. Thereafter Josephine Johnson, his widow, was duly appointed administratrix of his estate and duly qualified as such. An action at law for damages followed.

John Ferguson, one of the defendants, was a real estate broker with offices in the Gerlinger Building, 2d and Alder Streets, Portland, Oregon.

Plaintiff averred that C. J. Anderson, another defendant, was an employee of Ferguson, and that at Ferguson's request he undertook to convey Gustav Johnson, the deceased, and his wife, Josephine Johnson, in a Ford car alleged to belong to Ferguson, to a twenty-acre tract of land situate some miles distant from the City of Portland, which Ferguson and Anderson were offering for sale to the deceased.

Anderson drove the prospective purchasers from the brokers' place of business to Division Street, thence followed Division Street to 82d Street, thence along 82d Street until he arrived at its intersection with Powell Valley Road.

On that date, Myshale Underwood was the owner of a Velie automobile which he was driving in an easterly direction along Powell Valley Road. When he reached the intersection of Powell Valley Road with East 82d Street within the corporate limits of Portland, Oregon, the Ford car driven by Anderson collided with his automobile, with the result stated above.

The complaint charges, among other things, that both automobiles were being driven "at a high and dangerous rate of speed"; that each driver violated the traffic ordinances of the City of Portland by driving beyond the speed limit provided therein; that neither driver had his machine under control as he approached the intersection of Powell Valley Road with 82d Street, and that by reason thereof and. of the carelessness and negligence aforesaid, the automobiles collided and Gustav Johnson was violently thrown from the Ford automobile and instantly killed.

Defendant Ferguson filed a general denial.

Defendant Anderson admitted that he was in the real estate business, and that while he was taking deceased out to look at a piece of property a collision occurred in which Johnson was killed. For a separate answer and defense he alleged:

"That this defendant operated said automobile over, upon and along the westerly side of 82d Street where said street intersects with Powell Valley Road in Portland, Multnomah County, Oregon, and at the time of approaching said intersection, this defendant was operating said car at a speed of less than 20 miles

per hour and was using due care in operating said automobile and had said car at all times under his control * * and after he had passed the center of said intersection and in a place where he had a right to be, and while in the exercise of due care an automobile traveling in an easterly direction over and across said intersection and along the Powell Valley Road, and without fault of this defendant, struck the rear end of the defendant's car, and that by reason of said contact Gustav Johnson, now deceased, was thrown from the automobile in which he was riding, which resulted in his death.''

Myshale Underwood filed an answer in which he admitted:

"(1) The death of Gustav Johnson;

"(2) The automobile collision;

"(3) The appointment of Josephine Johnson as the administratrix of the estate of Gustav Johnson, deceased. And

"(4) The existence, force and effect of Ordinance 35,875 of the City of Portland, Oregon, but not the correctness of plaintiff's digest thereof, and denies each and every other allegation contained therein, except as hereinafter specifically admitted.''

For a further and separate defense, Underwood averred, in part, that:

"On November 21, 1919, he was driving his Velie automobile in an easterly direction on Powell Valley Road in the City of Portland, Oregon, * * proceeding at a * * rate of speed approximately fifteen miles an hour.

"That as he approached the intersection of Powell Valley Road with 82d Street he kept to the right * * ; that he was operating his machine at said time and place at approximately fifteen miles an hour; that he exercised due care and caution in approaching said intersection of said streets; that he had his said automobile under control * * ; that

while exercising due care and caution in operating his car, it collided with a Ford machine; that the said Ford machine was being operated at a high, unreasonable and dangerous rate of speed * * contrary to Section 15 of Ordinance No. 35,875 * * .

"That immediately upon seeing said Ford machine, this defendant put in the clutch and applied the brake of his automobile, doing his utmost to avoid the impending collision; * * that the said collision was due to the negligence of the operator of the Ford machine."

For a second further and separate answer and defense, he alleged:

"That at the time of said * * collision and for * * three quarters of an hour prior thereto, Gustav Johnson was a passenger in said Ford automobile; that * * Johnson * * understood * * or should have understood and appreciated that the driver of said Ford car was operating same at an excessive and dangerous rate of speed and failed to have said Ford under control at street intersections * * ; that although said Gustav Johnson knew, understood and appreciated * * all of the conditions under which said Ford machine was being operated, and the acts of negligence of the operator of said Ford machine hereinbefore alleged, said Gustav Johnson made no remonstrance with the driver * * as to the careless, reckless, negligent and imprudent manner in which said Ford was being operated * * ."

The action came on for trial, resulting in a verdict in favor of the plaintiff and against defendants John Ferguson, C. J. Anderson and Myshale Underwood, in the sum of $5,000. From judgment entered pursuant to the verdict, the defendant Myshale Underwood alone appeals, assigning error as follows:

In denying the motion of defendant Myshale Underwood for a nonsuit at the conclusion of the testimony for the plaintiff.

In refusing defendant Underwood's motion for a directed verdict.

In refusing the request of the defendant Underwood that the jury be instructed that plaintiff cannot recover against defendant.

In refusing to instruct the jury that vehicles approaching an intersection shall be under control so as to permit the vehicle on the right of the vehicle approaching to first cross the intersecting street as provided by certain ordinances of the City of Portland.

In refusing to instruct the jury concerning the extreme rate of speed permitted in the locality of the accident.

In refusing to instruct the jury at defendant Underwood's request:

"Construing these ordinances in the light of the admitted facts, I instruct you that the Velie automobile driven by the defendant Underwood was on the right of the Ford driven by defendant Anderson, and if you believe from the evidence that the two machines reached the intersection of 82d Street and Powell Valley at the same time, defendant Underwood would be entitled to the right of way and the defendant Anderson would be under the duty to have his automobile under control so as to permit Underwood to take right of way."

Assignments numbered 7 and 8 relate to the exclusion of the proffered testimony of Police Lieutenant Irvin.                                              AFFIRMED.

For appellant there was a brief over the names of *Mr. Julius Cohn* and *Messrs. Dey, Hampson & Nelson*, with oral arguments by *Mr. Roscoe C. Nelson* and *Mr. Cohn.*

For respondent there was a brief over the names of *Mr. Bert W. Henry* and *Messrs. Griffith, Leiter & Allen,* with an oral argument by *Mr. Henry.*

BROWN, J.—1. Appellant's assignments numbered 1, 2 and 3, involving a motion for nonsuit, for a directed verdict, and a requested instruction, cover the same ground, thus presenting but one question.   Underwood contends that by virtue of the circumstances disclosed by the record, the negligence of Anderson, the driver of the Ford, was imputable to the occupants of his car.   Also, it is asserted that Anderson's negligence in driving the car was apparent and continuous, and the likelihood of danger obvious.

While Johnson was an occupant of the Ford operated by Anderson, the law imposed upon him, as such occupant, the duty of exercising ordinary care for his own safety: *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 (134 Pac. 709, 712); *White* v. *Portland Gas & Coke Co.,* 84 Or. 643 (165 Pac. 1005).

At the conclusion of the presentation of plaintiff's proofs, the defendant Underwood moved for a nonsuit, as follows:

"Our motion for nonsuit as to this defendant is based upon the fact that it affirmatively appears from the testimony of the plaintiff herself, and from all the testimony introduced on behalf of the plaintiff, that the Ford automobile in which she was riding was being driven and had been driven for some distance and for some time at a grossly reckless,—in a grossly reckless manner; that plaintiff and the decedent had failed to protest or to interfere, and by such failure on their part had in law at least acquiesced in the method of operating the automobile to such an extent that they themselves, the decedent himself, would be guilty of contributory negligence, or that the negligence of the driver of the Ford auto-

mobile would be imputed to them; and it further appearing beyond question, from the testimony in behalf of the plaintiff, that if the gross negligence claimed by them on the part of the driver of the machine in which they were riding did not entirely cause the accident, it certainly was a proximate and contributing cause to it."

Section 182, subdivision 3, of our Code provides that:

"A judgment of nonsuit may be given against the plaintiff as provided in this chapter * * when upon the trial the plaintiff fails to prove a cause sufficient to be submitted to the jury."

2. Upon motion of defendant Underwood for judgment of nonsuit, the testimony given by the witnesses for plaintiff, together with all the presumptions and inferences legitimately deducible therefrom, must be considered as true: *Dayton* v. *Fenno,* 99 Or. 137, 143 (195 Pac. 154), and authorities therein noted. Applying this familiar rule, the court overruled the motion for nonsuit. Thereafter each defendant offered evidence in his own behalf.

3. It is the settled doctrine of this jurisdiction that whenever the defendant has not rested upon a motion for a nonsuit but has adduced proof in support of his own contention, such evidence may be considered in order to sustain a recovery on the part of the plaintiff. This court has held that it will never reverse a ruling of the trial court denying a nonsuit whenever, upon the whole case as presented both by the plaintiff and the defendant, the record shows sufficient evidence to take the case to the jury. Among the many authorities supporting this proposition, see *Cornely* v. *Campbell,* 95 Or. 345, 366 (186 Pac. 563, 187 Pac. 1103), citing *Vanyi* v. *Portland Flouring Mills Co.,*

63 Or. 520 (128 Pac. 830); *Caraduc* v. *Schanen-Blair Co.,* 66 Or. 310 (133 Pac. 636); *Oberstock* v. *United Rys. Co.,* 68 Or. 197 (137 Pac. 195); *Weygandt* v. *Bartle,* 88 Or. 310 (171 Pac. 587).

4. The defendant's motion for nonsuit was not waived, however, by the mere fact that after it was denied he submitted his evidence, unless such proofs cured the defect, if any, in plaintiff's case by establishing some material fact or facts necessary for her to prevail over this defendant: *Dayton* v. *Fenno, supra,* and authorities collected, p. 145.

In order to ascertain whether defendant's contentions concerning the proofs or want thereof are well taken, it will be necessary to review briefly the evidence adduced.

Josephine Johnson, administratrix of the estate, testified that Anderson drove the Ford south along 82d Street from Division very fast; that "the street was clear until we got to Powell Valley"; that he kept along the right-hand side of the road; that there was a very little grade, "and then it is perfectly level when it gets up a little bit further." In answer to the question: "Tell this jury approximately how fast Anderson was going with this Ford as he passed from the bottom of the grade out to Powell Valley Road," she said:

" * * We were going very fast * * . I saw the street coming there and—[Witness claps hands together].

"Q. Now, Mrs. Johnson, did you see the Velie car before it struck you?

"A. Yes.

"Q. How long before?

"A. Well, as I was looking that way, as I was saying, I saw the road coming and of course I was looking—I hadn't gotten straightened up yet, so I was

looking that way and I saw it—as soon as we cleared the store I saw it.

"Q. How far was the Velie from you at the time?

"A. Oh, about fifty feet as I got there, but it come so quick, like that, like lightning; of course it is pretty hard to say exactly the feet."

5. Witness did not reveal any special qualification as to her ability to judge the speed of a car. The Ford had no speedometer. She had never owned or operated a car but had ridden with her neighbors. Her testimony was competent, but not of great value in determining the speed of either car.

"Any intelligent witness who has been accustomed to observe moving objects is competent to testify to the rate of speed of a moving automobile, but the weight to be given such testimony must depend upon the opportunity the witness has had to form a correct opinion. * *

"The weight to be given the testimony of a witness in a given case depends upon all the attendant circumstances and is a question for the jury * *." Section 989, Berry on Automobiles (3 ed.).

Defendant Anderson testified that he had been running a car for some two years; that for about twenty-three years his principal occupation had been working for the Portland Railway, Light & Power Company. Concerning the trip from the Gerlinger Building at Second and Alder, in the Ford car with Mr. and Mrs. Johnson, he said:

"We made one stop at the filling station on Division Street, then we proceeded on our trip. To my notion I wasn't driving fast. I am not in the habit of driving fast at any time. I don't think I exceeded 20 miles at any time of the journey."

Witness stated that when he reached the intersection of 82d and Powell Valley Road he saw no car

approaching; that he was driving well toward the proper side of the road at that time. He said:

"There is some open spaces wherein you could see Powell Valley Road, and I saw nothing there, in any of those open spaces. I kept close watch on that going down there, and I saw no one or nothing."

He testified that he is familiar with the corner and had frequently been out on the road; that he did not see the Velie car before the collision; that he, himself, was injured in the collision,—was rendered unconscious for the time being, didn't know anything for quite a while afterwards, knew something had happened, but just what it was he couldn't say.

Defendant Underwood, a retired farmer and horticulturalist, driving his Velie, approached 82d Street from Powell Valley Road. He testified that he was unfamiliar with the crossing and, concerning 82d Street, that "I did not know it was there until we were very close to it."

"Q. How close did you say you were before you discovered that there was a cross-street there?

"A. Well, right somewhere close to that oiling station there, two or three rods back, perhaps."

He testified that he was driving below a twenty-mile rate, somewhere right around fifteen miles.

Fred R. Miller, witness on behalf of plaintiff, testified that he was traveling the Powell Valley Road when a Velie passed him going at a rate of about 35 miles an hour; that the Velie was about a block ahead of him at the time of the accident.

Bennie Tannler testified, concerning the accident, that he, accompanied by his mother and sister, was traveling north on 82d Street to Portland, about a block from the Powell Valley Road; that about a block away he saw a Velie coming. It was going at

a good speed, and "I never noticed the Ford until they hit—just as they were going to hit."

Mrs. W. A. Forbes testified that she was a block away from the scene at the time of the accident; that she saw the larger car coming east on Powell Valley just as it came in sight, there by the oil filling station.

"Q. Was there anything about the car that afterwards collided with the Ford that attracted your attention at that time?

"A. Yes, because it shot out so—it was going so fast that it drawed my attention. It just looked like it was going to cross 82d Street without a crossing being there.

"Q. Did that speed continue, as far as you are able to say, up until the car collided with the Ford?

"A. Yes, sir. * * The Ford * * was south of the center of the intersection when the Velie struck it."

6. Mr. Justice MOORE, in speaking for this court, said:

"It has been repeatedly held in this state, in actions to recover damages resulting from a personal injury, that, if it appears from the testimony offered by the plaintiff that the person sustaining the hurt was also guilty of negligence without which the injury complained of would not have happened, such proof, as a matter of law, will defeat a recovery: *Tucker* v. *Northern Terminal Co.,* 41 Or. 82 (68 Pac. 426); *Massey* v. *Seller,* 45 Or. 267 (77 Pac. 397); *Abbott* v. *Oregon R. & Nav. Co.,* 46 Or. 549 (80 Pac. 1012, 1 L. R. A. (N. S.) 851)." *Carroll* v. *Grande Ronde Electric Co.,* 47 Or. 427 (84 Pac. 389, 6 L. R. A. (N. S.) 290).

7. We cannot say, as a matter of law, that Gustav Johnson, the deceased, was guilty of such negligence without which the injury complained of would not have happened. The distance to Powell Valley Road

from the intersection of 82d Street and Division is about one-half mile. The road was open, level, and free from obstructions. The Johnsons had no knowledge that 82d Street was crossed by Powell Valley Road. They had no reason to doubt Anderson's capability as a driver. He appeared to be driving on the proper side of the road, and to be on the lookout. If he was driving at the rate of thirty miles an hour on 82d Street, it required little more than one minute for him to reach Powell Valley Road. However that may be, Anderson swore that he kept within the speed limit and that he drove carefully. Mrs. Johnson said that when she first saw Powell Valley Road the Velie was traveling at such a rate of speed that the collision occurred almost instantaneously. Underwood's testimony shows that he arrived within two or three rods of the intersection before he knew of the crossing.

As measured by the testimony at the conclusion of the evidence offered by the parties to this litigation, the overruling of the motion for nonsuit was proper. It follows that the ruling on the motion for a directed verdict was correct, as was the refusal to give the requested instruction embracing the same question.

It is claimed that the court erred in excluding from the consideration of the jury the testimony of Police Lieutenant Frank Irvin, a witness for defendant Underwood. Irvin testified that he was sergeant of motorcycle police, charged with the duty of making investigations of accidents; that he was called to the scene of the collision, and, in company with other officers, responded. He was asked by defendant's counsel:

"Q. Just state to the court what you ascertained and what was said and done.

"A. When I first arrived—"

The court sustained an objection to this question.

Defendant Underwood, through his counsel, then made the following offer of proof:

"We offer to show by this witness that in accordance with his duty he proceeded to endeavor to ascertain the facts as a basis for his report, and for such as may be proper, and while all the parties were there within hearing he examined persons who had information or were supposed to have it, and statements which they made were to the effect that the Ford automobile was traveling at the rate of 35 or 36 miles an hour at the time it came into Powell Valley Road and the collision occurred."

"Mr. Nelson: Was there anything else?

"Mr. Cohn: Yes, and that he spoke to all of them and asked them which car reached, first reached the intersection.

"Mr. Nelson: And that he spoke to the parties and witnesses there present and asked which if either car reached the intersection first and was informed that they reached the intersection about the same time.

"Mr. Cohn: Also that the Velie was proceeding at a moderate rate of speed and had the right of way.

"Mr. Nelson: And that the Velie car had the right of way, coming from the right of the other car, and was proceeding at a moderate rate of speed. This is our offer."

"Mr. Henry: The plaintiff has no objection to what the officer said, but does object to what other persons, other than the defendants in this case and the plaintiff, said to him, upon the ground that it is hearsay testimony. We do not object to any statements made by any of the parties to this action.

"Mr. Hart: The defendant Ferguson objects to the entire offer as being hearsay to him.

"Mr. Collier: And defendant Anderson will renew his objection upon the ground that the testimony offered is purely hearsay, not connected with the defendant Anderson in any manner, shape or form, not connected with any particular witness.

"The Court: The court will adhere to its previous ruling."

8. The court's ruling was correct. The theory upon which the acts or omissions of a party are admitted as evidence against him is that what is said to a man before his face he is in some degree called on to contradict, if he does not acquiesce in it: *Lee* v. *Cooley,* 13 Or. 437 (11 Pac. 70).

"Evidence may be given on the trial of a declaration or act of another, in the presence and within the observation of a party, and his conduct in relation thereto." Section 727, par. 3, Or. L.

In *Patty* v. *Salem Flouring Mills Co.,* 53 Or. 350 (96 Pac. 1106), the court says:

"This enactment (Section 727, L. O. L., subdivision 3) recognizes a well-established rule of evidence, which is to the effect that when a declaration is made in the presence and hearing of a party, who understands the full import thereof and is at liberty to reply thereto, and the utterance is made by such a person and under such circumstances as naturally to call for an answer, a failure to deny an assertion that is adverse to the known rights or interests of such party is tantamount to an implied admission of the truth of the affirmation: (Citing cases.)"

The case of *Stowell* v. *Hall,* 56 Or. 256 (108 Pac. 182), affords an illustration of the application of the rule, as does *Stark* v. *Epler,* 59 Or. 266 (117 Pac. 272). See, also, *State* v. *Ryan,* 56 Or. 535 (108 Pac. 1009); *State* v. *Wilkins,* 72 Or. 77, 84 (142 Pac. 589); *Welch*

v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280);
*State* v. *Evans,* 98 Or. 214, 235 (192 Pac. 1062).

9. What application has that section of the statute invoked to the case prosecuted by the administratrix? Gustav Johnson could neither admit nor contradict. No person was authorized in his stead to deny, explain or admit for him any statement there made.

10. Josephine Johnson, afterwards appointed administratrix, was not then his legal representative. Any admission, by silence or utterance, made by Mrs. Johnson on the day of the accident was not competent evidence against her in her representative capacity: *Williams* v. *Culver,* 39 Or. 337 (64 Pac. 763).

"Admissions may be implied from silence. But such testimony should be received and applied with caution, especially when the statements are made not by a party to the controversy. * * When there is no natural or reasonable inference from the silence of a party that he acquiesced in the truth of the statements, they should be excluded * * ." Jones on Evidence, § 289.

11. The admission of such evidence is a preliminary question for the court.

"Whether the situation was one from which the jury may reasonably find a party's conduct relevant to a fact in issue is a preliminary question for the court, to be determined in view of all the evidence in the case, direct or circumstantial; for a person is not at liberty to make evidence for himself by the simple expedient of saying something to his opponent and then supporting the truth of his statement by proof that it was not denied. Silence or acquiescence is a species of evidence to be received with caution; and proof of a statement made in the presence of the party should be stricken out if it is not followed by proof of the party's conduct on the occasion." 22 C. J. 325, 326.

The evidence offered was hearsay and not admissible. The statement of the proffered proof made to the court was too narrow to affect any party to this litigation, as the conduct of no party was even suggested in the offer.

12. On redirect examination of Irvin, he was asked:

" * * I will ask you to look at this picture, for instance; here is the running-board, which appears to be stove in, in a way; would that necessarily indicate that that running-board was hit by the other machine?

"Mr. Collier: I object to that as calling for the opinion of the witness."

No error was committed in sustaining the objection to that question.

13. Defendant Underwood assigns and argues error upon the part of the court because of refusal to instruct the jury as to the provisions of the ordinance of the City of Portland with regard to speed and right of way. The jury were instructed as follows by the court:

"It is further claimed in the complaint and in the answers of the defendants Anderson and Underwood that at the time of the accident mentioned in plaintiff's complaint, there was an ordinance in the City of Portland, in full force and effect, providing, among other things, that all vehicles approaching intersections of streets should be under control and should not be driven at a greater rate of speed than twenty miles per hour. If you should find from the evidence that there was such an ordinance in existence and in full force and effect at the time of the accident mentioned in plaintiff's complaint, and that at the time of the accident either of the defendants, Anderson or Underwood, approached the intersection where the collision occurred and did not have his machine under control so as to permit the vehicle on the right of the

vehicle approaching to first cross the intersecting street, and that it was going more than twenty miles per hour, and the violation of the ordinance caused or contributed to the accident, then I instruct you that the defendant so violating this ordinance would be guilty of negligence.

"The ordinance referred to also provides that vehicles approaching a street intersection from the right shall have the right of way over all other vehicles, except emergency vehicles, ambulances and streetcars. This right of precedence at a crossing has no proper application except where the travelers or vehicles on the intersecting streets approach the crossing so nearly at the same time and at such a rate of speed that, if both proceed, each without regard to the other, a collision or interference between them is reasonably to be apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield him the right of way. But if a traveler not having such right of preference comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right."

The foregoing charge covered the instructions requested, with the exception that the court submitted to the jury for determination the question of the existence of the ordinance alleged and proved.

14. We apply the doctrine announced by Mr. Justice BURNETT in *Emmons* v. *Southern Pac. Co.*, 97 Or. 263, 275 (191 Pac. 333):

"It is argued that this left to the jury the question of whether the ordinance was in effect or not. Section 90, L. O. L., prescribes a mode of pleading an ordinance of any incorporated city, town, or village to the effect that it shall be sufficient to refer to such an ordinance by its title or the date of its approval,

and that courts shall take judicial notice thereof. The error complained of, so far as the charge of the court left it to the jury to determine whether or not there was such an ordinance, was favorable to the defendant, because it placed an additional obstacle in the way of plaintiff's recovery. The court with all of the record before it, and in the absence of anything affirmatively to dispute the validity of the ordinance, ought to have told the jury that it was the law of the city and that a violation of it was negligence. For the reasons stated, the defendant cannot complain of this error."

The condition of the pleadings and the evidence submitted respecting the existence of the ordinance may have led the trial court to believe that judicial notice could not be taken thereof. Be that as it may, the instruction was favorable, not harmful, to Underwood's cause.

This case is affirmed.                    AFFIRMED.

BURNETT, C. J., and BEAN and McCOURT, JJ., concur.