Argued March 27; affirmed April 9, 1946

CAVETT *v.* PACIFIC GREYHOUND LINES ET AL.

(167 P. (2d) 941)

*J. Robert Patterson,* of Portland (with Milton R. Klepper, of Portland, on the brief), for appellant.

*James C. Dezendorf,* of Portland (with Hampson, Koerner, Young & Swett, of Portland, on the brief), for respondents.

KELLY, J.

This is an action for personal injuries sustained in an automobile and bus collision at a point about 25

miles southeast of Eugene, Oregon, on the Willamette Highway.

The accident occurred between 7:30 and 8 a. m. on December 12, 1943. There was ice on the pavement.

Plaintiff, R. E. Cavett, was riding in the front seat of a Pontiac Two-door Torpedo Sedan owned and being driven by Andrew J. Tacchella. Louis J. Tacchella, the driver's brother, was in the back seat.

The Tacchellas and Cavett, the plaintiff, who were officers of the Ideal Dairy Company, had left Portland at four o'clock that morning on their way to Klamath Falls on business of the dairy company.

On the evening of December 11, 1943, a Greyhound bus en route from Eugene to Klamath Falls had broken down at a point about 35 miles south of the scene of the accident. At about 1:30 o'clock a. m. of December 12, 1943, that being the day upon which the accident occurred, defendants Kapsa and Clickenger, employees of defendants, Pacific Greyhound Lines, left Eugene in a Greyhound bus to tow the disabled bus back to Eugene. While they were endeavoring to turn the disabled bus around, the tow-bar between the towing bus and the disabled bus cracked. The rear bumper of the touring bus and the front bumper of the disabled bus were then chained together to prevent them from separating if the cracked tow-bar should break.

Defendant Kapsa drove the lead bus and defendant Clickenger steered the disabled bus. Plaintiff's version of the accident is to the effect that as the car, in which plaintiff was riding, traveling southeasterly toward Klamath Falls, rounded a very sharp curve, the two Greyhound busses, owned by defendant corporation and operated by defendants Kapsa and Clickenger, appeared directly in front of the Tacchella car

coming northwesterly toward Eugene whereupon the driver of the Tacchella car immediately took his foot off the accelerator, although the speed of the Tacchella car was but 12 to 20 miles per hour. The car began to skid sideways around the curve, finally coming in contact with the lead bus in that the left middle of the Tacchella car struck the front left corner of the bus. At the time of the impact, the busses were on their own side of the highway and were either stopped or moving very slowly.

Defendants' version is to the effect that as the Tacchella car started around the curve, and as the lead bus was entering the curve, but before the Tacchella car could be seen, the driver of the lead bus saw the reflection of the lights on the Tacchella car and immediately signaled the defendant Clickenger, who was steering the disabled bus, that he was going to stop. Kapsa, the driver of the lead bus, then applied his brakes and stopped with the right front wheel of the lead bus off of the paved portion of the highway but upon the gravel shoulder thereof with the right front wheel against a white guard post.

Defendants insist that the witnesses were unanimous in testifying that the busses were stopped at the time of the collision and that the collision occurred over on the busses' half of the road.

Nine specifications of alleged negligence on defenants' part are set forth in plaintiff's complaint, namely:

1. In attempting to tow one bus with the use of another bus;

2. In attempting to tow one bus by another bus in view of the fact that at said time and place said highway was narrow, winding and coated with ice;

3. In operating said busses at an excessive rate of speed in view of said conditions then and there existing;

4. In operating said busses on the wrong and left-hand side of said highway;

5. In operating said busses on the wrong and left-hand side of said highway on a curve;

6. In bringing said busses to a sudden stop in front of said automobile;

7. In failing to keep a lookout for traffic and specially for said automobile;

8. In failing to have said busses under proper control; and

9. In suddenly applying brakes upon the lead bus and causing said bus to skid on the ice, bringing said bus directly in front of said automobile, which was attempting to stop or pass said busses to avoid said collision.

The material allegations of plaintiff's complaint, including the charge of negligence on defendants' part, were denied by defendants' answer and in a further and separate answer, the following allegations are set forth:

"II

That Andrew J. Tacchella, the driver of the automobile in which plaintiff was riding, was careless, reckless and negligent in the following particulars, to-wit:

1. In operating his automobile at a high, dangerous and excessive rate of speed considering the conditions then and there existing, and especially the fact that the highway which he was traveling was covered with ice.

2. In that he failed to keep his automobile under proper or any control so as to be able to keep it on the westerly or its own side of the road.

3. In failing to operate his automobile upon the west half of the highway in approaching defendant corporation's busses.

4. In that he failed to keep a proper or any lookout for vehicles approaching from the opposite di-

rection and to allow to them one-half of the paved portion of the highway.

### III

That plaintiff failed to protest against the careless, reckless and negligent acts of Andrew J. Tacchella in driving the automobile in which he was riding, but instead fully acquiesced in and consented to all of the negligent methods of operation hereinbefore alleged at and before the time of said collision.

### IV

That the negligence of planitiff herein and of Andrew J. Tacchella, the driver of the automobile in which plaintiff was riding, was the proximate cause of the accident and the injuries, if any, sustained by plaintiff.''

By reply, plaintiff put in issue the allegations of defendants' further and separate answer except as stated in plaintiff's complaint.

Upon trial to a jury a verdict was returned in favor of defendants and against plaintiff. From the resulting judgment, plaintiff appeals.

■ Plaintiff's first assignment of error is to the effect that error was committed by overruling plaintiff's objection to the introduction in evidence of the application for compensation made by plaintiff to the State Industrial Accident Commission. The purpose of its introduction was to disclose to the jury that plaintiff made statements therein which were inconsistent with his testimony in court.

The basis of plaintiff's contention that the trial court erred in admitting the application in evidence is the following provision of the Workmen's Compensation Act:

''In any third party action brought pursuant to the provisions of this act, the fact that the injured workman or his beneficiaries are entitled to or have

received benefits under the provisions of this act shall not be pleaded or admissible in evidence." Section 102-1729, Vol. 7, O. C. L. A., pp. 648, 649.

It is obvious that the application in itself alone does not, nor could it, prove the fact, if it be a fact, that plaintiff was entitled to or had received benefits under the Workmen's Compensation Act.

The statute does not purport to render privileged the statements made in such application. It merely declares in effect that right to receive, or the receipt of, benefits under the Workmen's Compensation Act may not be pleaded or given in evidence. Plaintiff's first assignment is therefore untenable.

■ Plaintiff by his second assignment contends that error was committed by overruling plaintiff's objection to the testimony of a third party to the effect that the driver of the car, in which plaintiff was riding, stated that the accident was due to his own negligence.

The driver had testified to the effect that the negligence of the driver of defendants' lead bus was the cause of the collision.

Plaintiff cites *Johnson v. Underwood,* 102 Or. 680, 203 P. 879, in support of his assignment of error in this respect. The doctrine of that case is that the statements of an individual, who thereafter became an administratrix, were not binding upon her as an administratrix.

Plaintiff also cites *Cooley v. Killingsworth,* 209 Iowa 646, 228 N. W. 880, p. 886.

The doctrine of the Cooley-Killingsworth case is that statements of a driver made sometime after an accident not being part of *res gestae* were not admissible as admissions of the principal, because there was nothing in the record showing that the principal had authorized the driver to speak or act for him.

■ In the case at bar, the statements of the driver were received because they contradicted his testimony. Plaintiff cites 76 A. L. R. 1125. The annotation there found cites the case of *Itzkowitz v. P. H. Ruebel & Co.,* 158 Ark. 454, 250 S. W. 535, wherein it is held that such statements are competent for the purpose of contradiction. Objection was not interposed at the trial that proper foundation for impeachment of the driver was not laid; and hence that objection is not available upon appeal. It follows that plaintiff's second assignment cannot be upheld.

■ As to plaintiff's third assignment of error, it is true that at one point in the trial, the court ruled that the plaintiff could not properly impeach his own witness. It is also true that the witness, sought to be impeached, was one of the defendants whom plaintiff had called as a witness. The ruling was made when the defendant was asked if, at a time and place stated and in the presence of persons named, said defendant had not made specified statements to State Police Officer Rice which were inconsistent with and contradictory of said defendant's testimony. When State Police Officer Rice was upon the stand, however, he testified fully and without objection as to what that defendant had said to him.

For these reasons, any error which might be attributed to the trial court in holding that a party, who has been called as a witness by the opposing party, may not be impeached by the party calling him, was cured by the subsequent receipt of the impeaching statements.

■ Plaintiff's fourth assignment of error is based upon the court's action in permitting defendants to elicit a statement from the driver of the car in which plaintiff was riding that if there had been no ice on the road there would have been no accident.

The case of *Chan Sing v. Portland*, 37 Or. 68, 60 P. 718, is cited to this point by plaintiff. There, witnesses, who had not seen the overflow of a sewer constituting the gravamen of plaintiff's action, were permitted to state their opinion as to its cause. The distinction between that case and the instant case is that in the Chan Sing case the question was one for an expert. In the case at bar, the answer to the question was obvious to any one present at the time and place of the accident.

We hold that error was not committed as charged in plaintiff's fourth assignment.

■ The lack of any substantial evidence in support of plaintiff's specifications of negligence herein numbered 1, 2, 6, 7 and 9 warranted the learned trial judge in withdrawing each of those specifications from the consideration of the jury. This results in holding that plaintiff's assignments of error numbered 5, 6, 7, 8 and 9 are without merit.

Paragraph X of plaintiff's complaint is as follows:

"X

That at the time of receiving said injuries, plaintiff was an able-bodied man, regularly employed, and earning an income of $370.00 per month, and ever since receiving said injuries has been and now is totally disabled; therefore plaintiff is specially damaged in the sum of $3885.00 on account of loss of income to and including the 13th day of December, 1944."

■ Consideration of paragraph X, above quoted, was withdrawn from the jury and plaintiff's tenth assignment charges that error was thereby committed.

It will be noted that said paragraph X tenders the issue whether prior to the accident in suit plaintiff was an able-bodied man. As a witness in his own be-

half, plaintiff testified that for many years prior to the accident he had been a sufferer and a cripple due to a disease diagnosed by some physicians as arthritis and by others as some other disease affecting the bones. Plaintiff also testified that, in order to be able to walk any considerable distance, for many years before the accident and at the time of the accident, plaintiff was required to make use of crutches.

It is also alleged in said paragraph X that "ever since receiving said injuries" plaintiff has been totally disabled. The testimony is to the effect that subsequent to plaintiff's leaving the hospital plaintiff has been able to resume his work as manager of the corporation of which he is president and the principal stockholder.

Moreover, the testimony discloses that instead of losing his income from his earnings since the accident in suit, plaintiff has received a substantial sum therefrom and at the time of the trial was unable to state how much, if any, would be withheld by the corporation, because of his injury in the collision in suit.

It follows that the testimony is inconsistent with plaintiff's pleading, uncertain as to the amount of his special damages for loss of earnings; and in order to make a definite finding thereon, the jury would be required to enter the realm of speculation and guesswork; hence no error was committed by the trial court in withdrawing said paragraph X from the consideration of the jury.

Upon the subject of imputed negligence, the trial court gave the following instruction:

"Every passenger in an automobile, or guest, has the duty imposed upon him to use reasonable care for his own safety, and if such passenger, occupant or guest is riding in a car where he realizes

and knows or by the exercise of reasonable care he should know that the driver of that car is driving negligently and carelessly, he has a positive duty to remonstrate with the driver for the manner in which he is operating a car. He must do that for his own safety; and if you find in this case that Andrew Tacchella was driving his car in a negligent manner and that the plaintiff realized the manner in which the car was being operated, if it was negligent, and he had time to remonstrate or protest the manner in which he was driving, and did not do so, then the plaintiff would adopt or assume the negligence of the other driver. This is what counsel referred to as 'imputed negligence'. The negligence of the driver is imputed to the guest or passenger of the car when he knows it is being operated in a careless manner, or by the exercise of reasonable care should know.''

 The giving of this instruction is the basis of plaintiff's eleventh assignment of error. The plaintiff did not save an exception to the action of the trial court in this respect. Plaintiff argues that because he submitted a requested instruction withdrawing the issue of contributory negligence entirely, it was unnecessary to save a specific exception to the instruction actually given. We cannot concur in that argument. There was some evidence of joint enterprise on the part of the occupants of the car in which plaintiff was riding. They were the three officers of the same corporation. The fact that plaintiff and his associates were only four hours in coming from Portland to the place of the accident would indicate an average rate of speed which defendants contend was excessive upon an icy pavement. The applications for compensation, under the Workmen's Compensation Act, which were filed by plaintiff and the driver of the Pontiac, disclose that at the time of the accident the three occupants of the

Pontiac were on a mission pertaining to their corporation's business. This was not extensively developed and is far from conclusive; but we hold that a contention that no instruction upon contributory negligence should be given does not call the attention of the trial court to an error in stating the principles of law upon that subject. We have no doubt that if an exception to the instruction under consideration had been asked upon the ground that this instruction does not require the right of control over the driver by the plaintiff to be shown in order to impute the negligence of the driver to plaintiff, the trial judge would have given heed to that suggestion and would have promptly qualified his instruction to conform to the law in that respect. For these reasons, we cannot give effect to plaintiff's eleventh assignment of error. If the facts as shown by the record rendered this case one which presents a close question as to whether the collision was the result of defendants' negligence or that of plaintiff's driver, we might exercise our right under Rule 2 and "take notice of an error of law apparent on the face of the record". We do not regard the record before us in that light.

■ Plaintiff's twelfth, thirteenth and fourteenth assignments of error was based upon the giving by the trial court of the following instructions:

"If you find that the busses were stopped on their own side of the highway at the time the car in which plaintiff was riding came around the corner and when the occupants thereof first saw the busses, then your verdict must be for the defendants and against the plaintiff."

"Even if you believe that the busses were in motion when they were first observed by the occupants of the car in which the plaintiff was riding, you may not find a verdict against the defendants

unless you further find that when the busses were first observed they were wholly or partially over the yellow line on the wrong side of the highway which the Tacchella car was entitled to occupy and unless you further find that the accident would not have happened except for the presence of the busses over on the wrong side of the road.''

"Before you may find the defendants liable, you must first find that all or part of the busses were on the wrong side of the highway and over the yellow line, and that their presence on the wrong side of the road was the proximate cause of the accident.''

In the light of the testimony in the case at bar, the only charge of negligence on defendant's part which properly could be submitted to the jury was that of operating said busses on the wrong and left-hand side of the highway on a curve.

*Halton v. Fellows,* 157 Or. 514, 73 P. (2d) 680, cited by plaintiff, criticises the trial court's instruction upon skidding, because it indicated that skidding of an automobile onto the left side of the road constitutes a violation of the law of the road. We held that when a car skids to the left side and collides with another automobile there might be an inference of a violation of the law of the road, but such an inference is one of fact and not of law.

In *Mullis v. Pinnacle Flour & Feed Co.,* 152 S. C. 239, 149 S. E. 329, cited by plaintiff, it is held that while it is not negligence *per se* to stop and park an automobile in the middle of a highway, a person there stopping or parking an automobile should use such ordinary care for the rights of other travelers on the road as is consistent with their safety.

In neither of the two cases last above cited is it held that negligence not pleaded and proven will support a verdict or judgment.

Plaintiff's fifteenth and sixteenth assignments charge that the court erred in refusing to give the following instructions requested by the plaintiff:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway."

"No vehicle with or without load shall exceed a length of 35 feet, extreme over-all dimension, inclusive of front and rear bumpers, and no train of vehicles coupled together with or without load shall exceed a total length of 50 feet; provided, however, that the foregoing limit of 50 feet in total length of any combination of vehicles shall not apply to vehicles or any combination of vehicles used by public utilities in hauling and transporting poles, piling and/or structures used or to be used in connection with the business of such public utility transporting and hauling the same. A truck tractor and semi-trailer shall be construed to be one vehicle, and a motor vehicle and a pole or pipe dolly shall be construed to be a train of vehicles for the purpose of determining length."

■ The provision of the statute upon which the fifteenth assignment is based (Sec. 115-353 (a) Vol. 8, O. C. L. A., pp. 754, 755) does not apply to vehicles which have merely turned to the side of the road for

the purpose of avoiding a collision with an approaching vehicle.

■■■■ The provision of the statute prescribing the maximum length of a combination of vehicle does not apply to two vehicles, one of which is towing the other because it is disabled.

> "Since when a machine is disabled on a street or highway some disposition must be made of it, and since there is probably no better method of disposing of it than to attach it to another machine and tow it away, in the absence of a statute or ordinance to the contrary, it is lawful to tow an automobile through or upon a street or highway, provided the person so towing exercises due care for the safety of others. * * *" Section 1141, Vol. 2, Cyclopedia of Automobile Law and Practice, Blashfield, Permanent Edition.

Neither plaintiff's assignment fifteen nor sixteen is tenable.

■■■ Plaintiff's seventeenth assignment charges that error was committed by the trial court in refusing to give the following instruction requested by plaintiff:

> "If you find that the plaintiff, Mr. Cavett, was not in control of the driver of the car, nor exercised any authority over the car's movements, it would be immaterial that the driver, Mr. Tacchella, was negligent in the operation of the car, and if you should further find that defendants were negligent in any manner, no matter how slight, in the operation of the busses, and you further find Mr. Cavett exercised ordinary care to avoid injury to himself, then you must return a verdict for the plaintiff."

The element of proximate cause is omitted from the foregoing requested instruction; and, if the trial court had given the instruction as requested, error would thereby have been committed. The basis of

plaintiff's seventeenth assignment of error is the failure to give the requested instruction last above quoted. For the reason that it declares that mere negligence of defendant will support a verdict in favor of plaintiff in a case of this character without regard to whether or not such negligence was the proximate cause of damage or injury to plaintiff, the assignment of error based upon the refusal of the court to give such requested instruction is without merit.

A careful consideration of the record in this case leads to the conclusion that the judgment of the circuit court should be affirmed and it is so ordered.